STATE of Wisconsin, Plaintiff-Respondent,

v.

Andre L. MILLER, Defendant-Appellant.

Court of Appeals

*No. 2011AP901–CR. Submitted on briefs March 1, 2012.
—Decided May 9, 2012.*

2012 WI App 68

(Also reported in 816 N.W.2d 331.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey J. Guerard* of *Guerard Law LLC*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christopher G. Wren*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Neubauer, P.J., Reilly and Gundrum, JJ.

¶ 1. GUNDRUM, J.   Andre L. Miller appeals from his judgment of conviction for disorderly conduct (use of a dangerous weapon), carrying a concealed weapon, second-degree reckless endangerment, and obstructing an officer. Miller argues that he is entitled to a new trial

because the trial court permitted the State to show the jury a video in which a detective interviewing Miller states multiple times that Miller is lying and should tell him the truth. Miller also contends he is entitled to a new trial because the prosecutor commented during closing argument that a State witness was telling the truth and Miller was "a liar." Because the detective's comments on the video did not violate the *Haseltine*[1] rule prohibiting a witness at trial from commenting on the credibility of another person's statements and because the prosecutor's now-challenged statements at closing argument were forfeited and did not amount to plain error, we affirm.

### *Background*

¶ 2.   The following evidence was presented at the jury trial. On October 30, 2009, Nathan Drewry went to Miller's residence to confront him about contact he was having with Drewry's girlfriend. Miller met Drewry at the door with a baseball bat and a fight ensued. Miller struck Drewry with the bat. Drewry subsequently observed Miller run to a nearby car, retrieve what appeared to be a small revolver or a cap gun, and fire it at him.

¶ 3.   Several hours after the incident, Detective Pat Primising reached Miller by phone to inform him he was investigating the incident that occurred at Miller's residence earlier that day. Miller responded that he had been at work and not home all day.

¶ 4.   Two days later, Primising interviewed Miller at the police department, recording the interview on DVD. The DVD of the interview shows Miller changing

---

[1] *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984).

his original story that he had been at work at the time of the incident to acknowledging he had been home. It also shows Miller on multiple occasions denying ever possessing or firing a gun, and Primising on multiple occasions telling Miller he is lying.

¶ 5. The DVD further shows Miller alone in the interview room, engaged in a cell phone conversation. During this conversation, Miller can be seen covering his mouth and asking the person on the other end of the call if he should just tell the police he had a cap gun.

¶ 6. Miller was eventually charged with disorderly conduct while possessing a dangerous weapon (i.e., a baseball bat), carrying a concealed weapon, second-degree reckless endangerment, and obstructing an officer. He sought to preclude the State from playing the DVD for the jury at trial.

¶ 7. The trial court, noting that it had reviewed the video more than once, engaged in discussions with the parties regarding multiple admissibility issues related to the video, resulting in portions of the video being redacted. The court determined the video was "highly probative," particularly with regard to Miller's body language and change of story as to whether he was home or at work during the incident. The court allowed Primising's statements to remain in the video to maintain the "continuity" of the interview and "to provide a complete picture as to why Mr. Miller responded the way he did." The court characterized Primising's statements that Miller was lying as "interrogation technique[s]." The court allowed the redacted video to be played for the jury, concluding there was no problem under *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984), because "there's a legal distinction between playing a DVD and asking the question under oath in front of a jury."

¶ 8.    At the time the video was played during the trial, the court instructed the jury that "what Detective Primising says and tells Mr. Miller on the DVD [] is not being played for you as being that those things are true that he's saying but rather [] to provide a continuity of the entire interview." Shortly before the parties' closing arguments, the court also instructed jurors that they were "the sole judge of the credibility; that is, the believability of the witnesses and of the weight to be given to their testimony." The court further instructed the jury that remarks of the attorneys and their "arguments and conclusions and opinions are not evidence," and that jurors should "[d]raw [their] own conclusions from the evidence and decide upon [their] verdict according to the evidence, under the instructions given [to them] by the Court."

¶ 9.    During closing arguments, the prosecutor told the jurors it was their job to assess witness credibility and he suggested ways to evaluate that credibility. He recapped and gave a detailed assessment of the evidence. Pointing out that Drewry's statements were consistent with other evidence in the case, he argued "[Drewry's] telling you the truth." He then pointed out inconsistencies between Miller's statements and other evidence. He reminded the jury of the video showing Miller covering his mouth while talking on a cell phone and asking the person on the other end of the line if he should just tell the police he had a cap gun. The prosecutor then further argued, "And after watching that tape, you know—and looking at the actions which speak louder than words—that Andre [Miller] is a liar. He's not credible." Miller neither objected to these statements nor moved for a mistrial. Miller was convicted on each count.

### *Admissibility of the Video*

■■

¶ 10.  Decisions on whether to admit certain evidence at trial are left to the broad discretion of the trial court. *State v. Kandutsch*, 2011 WI 78, ¶ 23, 336 Wis. 2d 478, 799 N.W.2d 865. On appeal, we will uphold the trial court's evidentiary decision if the court "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Martindale v. Ripp*, 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698.

■■■■■

¶ 11.  Relying on *Haseltine*, Miller contends the video should not have been played for the jury because in it Primising tells Miller multiple times he is lying. *See Haseltine*, 120 Wis. 2d at 96. Miller points out that *Haseltine* prohibits a witness from giving an opinion on whether another witness is telling the truth because it invades the jury's role as the sole determiner of credibility. *See id.* We conclude that because the comments made by Primising on the video were made in the context of a pretrial police investigation and were not made as sworn testimony in court, the *Haseltine* rule was not violated.

¶ 12.  The defendant in *Haseltine* was on trial for having sexual contact with his sixteen-year-old daughter. *Id.* at 93–94. The daughter testified that the defendant had repeatedly had sexual intercourse with her over a two-year period. *Id.* at 95. The State's expert witness, a psychiatrist, subsequently testified that there "was no doubt whatsoever" the daughter was an incest victim. *Id.* at 95–96. The court held that such testimony was impermissible and that generally a wit-

744

ness should not be permitted to give his or her opinion on whether another witness is telling the truth.[2] *Id.* at 96.

¶ 13. Because Miller's objection in this case relates to unsworn, out-of-court statements made by a detective during the course of his investigation, however, this case is more akin to *State v. Smith*, 170 Wis. 2d 701, 490 N.W.2d 40 (Ct. App. 1992), than to *Haseltine*. In *Smith*, a detective testified at trial regarding whether, during the pretrial investigation of the case, he had believed statements a State witness, an accomplice, had made to him. *Smith*, 170 Wis. 2d at 705, 706. He testified that, at the time of the investigation:

> I thought, in my opinion, that [the accomplice] knew a
> lot more than he was telling me, but it was my thought
> I was getting closer to a point with him where he might

---

[2] Miller also relies heavily on *State v. Kleser*, 2010 WI 88, ¶ 104, 328 Wis. 2d 42, 786 N.W.2d 144, pointing out that *Kleser* extended the *Haseltine* rule to also prohibit a witness from "vouching" for the truthfulness of out-of-court statements of someone who does not testify. Miller is correct that *Kleser* did extend the rule in this way. Miller goes further, however, by also contending that "*Kleser* stands for the proposition that it does not matter if the vouching is by testimony *or other means.*" (Emphasis added.) This is incorrect. *Kleser* involved a sworn witness vouching in court for the truthfulness of out-of-court statements of the defendant. *Kleser*, 328 Wis. 2d 42, ¶¶ 101, 104. *Kleser* did not in any way suggest that out-of-court statements, like Primising's in the video, which are made by someone who also happens to be a witness at trial, are to be treated the same as sworn testimony in court. *See id.*, ¶¶ 98–107. Because the issue in this case boils down to whether the *Haseltine* rule applies when the alleged impermissible statements are made in a context other than sworn, in-court testimony, *Kleser* adds nothing to our analysis.

just tell me the truth, so it was at that point that [another officer] came in and told him that Mr. Smith was cooperating, and, after [the officer] left the room, [the accomplice] and I talked more about his fear of Mr. Smith—and along those lines—and it was at that point that he began to change his story to why [sic] I felt was the truth.

*Id.*

¶ 14. Though the detective's statements in *Smith* were made as part of his in-court, under-oath testimony, the court concluded that the *Haseltine* rule was not violated because "neither the purpose nor the effect of the testimony was to attest to [the witness's] truthfulness," given the detective made these statements in the context of explaining the circumstances of the witness's interrogation and the reasons for it. *Smith*, 170 Wis. 2d at 718.

¶ 15. Like the detective's statements in *Smith*, neither the purpose nor the effect of Primising's statements in the video was to attest to Miller's truthfulness. *See id.* Moreover, Primising's statements present even less *Haseltine* concerns than the statements permitted in *Smith* because Primising's statements were not made as sworn testimony. As the trial court observed, Primising's statements amounted to an unsworn "interrogation technique." The video showing this technique and Miller's responses to it provided the jury the necessary framework for understanding those responses. Indeed, at the time the video was played, the court made a point to instruct the jury that Primising's statements to Miller were not being offered as true but to provide continuity for the entire interview.

¶ 16. In short, because Primising's statements were not made as sworn testimony providing his opinion regarding the truth of Miller's statements to the fact

finder but were instead made in the context of a pretrial police investigation, the *Haseltine* rule was not violated and the trial court did not err by permitting the DVD to be played for the jury.

### *Prosecutor's Closing Arguments*

¶ 17.   Miller also contends he is entitled to a new trial because the prosecutor told the jury during his closing arguments that Drewry was "telling you the truth" and "actions [] speak louder than words—[] Andre is a liar." Because Miller neither objected to the prosecutor's comments nor moved for a mistrial, he forfeited these challenges. *See State v. Saunders*, 2011 WI App 156, ¶ 29 n.5, 338 Wis. 2d 160, 807 N.W.2d 679. He argues that he is nonetheless entitled to a new trial because the prosecutor's comments amounted to plain error. We disagree.

¶ 18.   WISCONSIN STAT. § 901.03(4) (2009–10) recognizes the "plain error" doctrine, which allows appellate courts to review errors that were otherwise forfeited by a party's failure to object. *See State v. Lammers*, 2009 WI App 136, ¶ 12, 321 Wis. 2d 376, 773 N.W.2d 463. Plain error is "error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time." *Id.* (citation omitted). The error, however, must be "obvious and substantial," and courts should use the plain error doctrine sparingly. *Id.* There is no bright-line rule for what constitutes plain error. *Id.*, ¶ 13. Rather, the existence of plain error will turn on the facts of the particular case. *Id.*

¶ 19.   When   a   defendant   alleges   that   a prosecutor's statements constituted plain error, the test

we apply is whether, in the context of the entire record of the trial, the statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See State v. Davidson*, 2000 WI 91, ¶ 88, 236 Wis. 2d 537, 613 N.W.2d 606) (citation omitted).

██ ██

¶ 20.   During closing arguments, a prosecutor is entitled to "comment on the evidence, detail the evidence, argue from it to a conclusion, and state that the evidence convinces him or her and should convince the jurors." *See State v. Adams*, 221 Wis. 2d 1, 19, 584 N.W.2d 695 (Ct. App. 1998). Further, "a prosecutor is permitted to comment on the credibility of witnesses as long as that comment is based on evidence presented." *Id.* at 17. This is what the prosecutor did here.

¶ 21.   In his closing argument, the prosecutor suggested to the jury ways to evaluate the credibility of the witnesses. He then presented a detailed assessment of the evidence against Miller, which included Drewry's testimony that Miller ran to a car, retrieved what appeared to Drewry to be a small revolver or cap gun, and fired it at Drewry. He pointed out consistencies between Drewry's statements and other evidence and told the jury, "[Drewry's] telling you the truth." In contrast, he pointed out inconsistencies between Miller's statements and other evidence. The prosecutor reminded jurors of the video showing Miller covering his mouth while talking on a cell phone and asking the person on the other end of the line if he should just tell the police he had a cap gun. The prosecutor argued, "And after watching that tape, you know—and looking at the actions which speak louder than words—that Andre is a liar. He's not credible."

¶ 22. We are satisfied that the prosecutor's comments were properly tied to the evidence. We further recognize the import of the trial court's instructions to the jury that the attorneys' arguments, conclusions, and opinions are not evidence, that the jury is the sole judge of credibility, and that jurors should draw their own conclusions from the evidence and decide upon their verdict according to the evidence. These instructions, which we presume the jurors followed,[3] alleviate the likelihood that jurors placed any significant weight on the prosecutor's comments other than the weight that came from their own independent examination of the evidence. *See State v. Mayo*, 2007 WI 78, ¶ 43, 301 Wis. 2d 642, 734 N.W.2d 115; *see also State v. Adams*, 221 Wis. 2d 1, 19, 548 N.W.2d 695 (Ct. App. 1998).

¶ 23. We are not persuaded that the prosecutor's remarks were so egregious as to constitute plain error or usurp the role of the jury as arbiter of witness credibility. *See Davidson*, 236 Wis. 2d 537, ¶ 88. The comments were limited in scope, were direct commentary on the evidence, and were an exercise of the prosecution reasoning from the evidence to a conclusion. *See id.*, and *Adams*, 221 Wis. 2d at 19. Further, the court's instructions to the jury put the comments in proper perspective. *See Adams*, 221 Wis. 2d at 19. Thus, in light of the entire trial, we conclude that the prosecutor's remarks did not deprive Miller of a fair trial.

*By the Court.*—Judgment affirmed.

---

[3] *See State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432 (Ct. App. 1989) ("We presume that the jury follows the instructions given to it.").