**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 30, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.        **2020AP368**

Cir. Ct. No. **2014CF2989**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MICHAEL L. DIXON,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed*.

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM.  Michael L. Dixon, *pro se*, appeals the circuit court order denying his WIS. STAT. § 974.06 (2019-20)[1] motion.  Dixon seeks an evidentiary hearing or a new trial on numerous grounds.  In addition, Dixon requests a copy of his interrogation video.  For the reasons discussed below, we affirm.

**BACKGROUND**

¶2  A jury found Dixon guilty of two counts of second-degree sexual assault of a child for having intercourse with thirteen-year-old S.O. in 2002 and fourteen-year-old D.D. in 2011.[2]  Dixon was linked to these crimes by DNA evidence.

¶3  Following his conviction, Dixon's appointed counsel filed a WIS. STAT. RULE 809.30 postconviction motion on his behalf.  The motion sought a new trial on the grounds that trial counsel was ineffective for failing to object on confrontation grounds to testimony from Gina Kleist, a manager at Aurora Sinai Hospital and an on-call sexual assault nurse examiner (SANE).

¶4  In a supplemental motion, Dixon raised several additional claims, including that:  (1) trial counsel was ineffective for failing to file a motion to suppress the DNA evidence due to an illegal arrest; (2) the State committed a *Brady* violation[3] when it failed to disclose discovery material regarding the

---

[1]  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  The Honorable Timothy G. Dugan presided over the trial.  The Honorable Jeffrey A. Wagner presided over all of the postconviction proceedings.  We refer to Judge Dugan as the trial court and Judge Wagner as the circuit court.

[3]  *See Brady v. Maryland*, 373 U.S. 83 (1963).

collection, transportation, and testing of a 2012 DNA sample from Dixon; and (3) trial counsel was ineffective for failing to move for a mistrial based on the prosecutor's opening statement remarks. Subsequently, after receiving a response from the State which included police reports, a form signed by Dixon consenting to DNA swabs, a chain of custody form, and a crime laboratory report, Dixon withdrew his ***Brady*** claim.

¶5 The circuit court denied Dixon's WIS. STAT. RULE 809.30 postconviction motion without a hearing, and Dixon appealed. This court affirmed the order of the circuit court. *See **State v. Dixon** (**Dixon I**)*, No. 2017AP1252-CR, unpublished slip op. (WI App June 27, 2018). A petition for review was filed, which the Wisconsin Supreme Court denied.

¶6 Subsequently, Dixon, *pro se*, filed the WIS. STAT. § 974.06 motion underlying this appeal. Dixon's claims included that: (1) postconviction/appellate counsel was ineffective for failing to raise his confrontation clause issue as plain error and/or prosecutorial misconduct; (2) trial counsel and postconviction counsel were ineffective for failing to investigate the allegations underlying two dismissed counts of sexual assault relating to a third victim, S.E.; (3) trial counsel was ineffective for failing to retain a DNA expert; (4) trial counsel was ineffective for failing to obtain Dixon's police interrogation video and filing a motion to suppress; (5) trial counsel was ineffective for failing to investigate the State's claim of DNA evidence from 2012, and moving to suppress the DNA evidence; (6) Dixon's trial testimony was improperly limited; and (7) trial counsel was ineffective for failing to request WIS JI—CRIMINAL 141 on witness identification. Finally, Dixon requested a copy of his interrogation video.

3

¶7     The circuit court denied Dixon's WIS. STAT. § 974.06 motion without an evidentiary hearing.   First, in regards to Dixon's confrontation challenge, the circuit court found that Dixon needed to raise this claim through a ***Knight*** petition.[4]  *See **State v. Knight***, 168 Wis. 2d 509, 512, 484 N.W.2d 540 (1992).  In addition, the circuit court noted that it had previously determined that the statements at issue were not a confrontation clause violation, and it would not entertain Dixon's attempt to re-litigate this claim.  Second, the circuit court found that Dixon's claim that S.E.'s allegations were fabricated was purely self-serving, unsupported, and procedurally barred.  Third, the circuit court found that Dixon's DNA expert claim was insufficiently pled.

¶8     In regards to Dixon's fourth claim, the circuit court rejected Dixon's argument that counsel should have moved to suppress the DNA collected from him because Dixon had testified at trial that he provided a DNA sample voluntarily.  Fifth, the circuit court found that trial counsel was not ineffective for failing to investigate the State's claim of DNA evidence and filing a motion to suppress because this was a "rehash" of Dixon's argument in his supplemental motion.  Sixth, the circuit court found that Dixon's testimony was not improperly limited by the trial court, and even if Dixon had affirmatively denied sexually assaulting the victims on the stand, it "would not have dispelled the strength of the damning DNA evidence[.]"  Finally, the circuit court found that Dixon was not prejudiced by the absence of WIS JI—CRIMINAL 141 because his identification was established by DNA evidence, not by the victims' testimony.[5]

---

[4] Dixon subsequently filed a ***Knight*** petition, which we denied.  ***State ex rel. Dixon v. Benzel***, No. 2021AP788-W, unpublished slip op. and order (WI App Apr. 27, 2022).

[5] The circuit court did not explicitly address Dixon's request for the interrogation video.

¶9      This appeal follows.  We address additional relevant facts below.

## DISCUSSION

¶10     Dixon renews the arguments in his WIS. STAT. § 974.06 motion on appeal.  We first address the underlying legal principles.  We then address each of Dixon's arguments.

### A.  Legal principles

¶11     WISCONSIN STAT. § 974.06 provides a mechanism for prisoners to raise constitutional claims after the time for a direct appeal has expired.  However, it "was not designed so that a defendant, upon conviction, could raise some constitutional issues on appeal and strategically wait to raise other constitutional issues a few years later."  *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994).   Thus, when a defendant seeks relief under § 974.06 following a prior appeal, the motion must establish a "sufficient reason" for failing to raise any issues that could have been raised in the earlier proceedings.  *Id.*

¶12     A claim of ineffective assistance of counsel may present a "sufficient reason" to overcome the procedural bar.  *See State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 682, 556 N.W.2d 136 (Ct. App. 1996).  To state a claim for ineffective assistance of counsel, a defendant must demonstrate that: (1) counsel's performance was deficient; and (2) the deficient performance was prejudicial.  *State v. Romero-Georgana*, 2014 WI 83, ¶39, 360 Wis. 2d 522, 849 N.W.2d 668.  A defendant who alleges that postconviction counsel was ineffective for failing to raise certain issues must also show that a particular issue is "clearly stronger" than the postconviction issues that counsel did present.  *Id.*, ¶¶45-46.

¶13 Whether a postconviction motion entitles a defendant to a hearing is a mixed standard of review. *See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. First, we independently determine "whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. If the postconviction motion "does not raise facts sufficient to entitle the defendant to relief, or if it presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.*, ¶28; *see also State v. Spencer*, 2022 WI 56, ¶¶48-49, 403 Wis. 2d 86, 976 N.W.2d 383. We review discretionary decisions for an erroneous exercise of discretion. *Ruffin*, 401 Wis. 2d 619, ¶28.

## B. Confrontation claim

¶14 At trial, Debra Martinez, the SANE nurse who examined D.D., did not testify due to a family emergency. The State introduced Martinez's report through the testimony of Gina Kleist, a manager at Aurora Sinai Hospital and an on-call SANE nurse. Kleist testified about the standard procedures that SANE nurses follow, and read portions of Martinez's medical report into the record, which included D.D.'s description of the assault and Martinez's physical examination of D.D. In addition, the physical evidence collected by Martinez was also introduced through Kleist.

¶15 On direct appeal, Dixon alleged that trial counsel was ineffective for failing to object on confrontation grounds to Kleist's testimony. *See* U.S. CONST. amend. VI; WIS. CONST. art. I, § 7. Both the circuit court and this court rejected this claim. In denying Dixon's WIS. STAT. RULE 809.30 postconviction motion, the circuit court found that Martinez's out-of-court statements were not

testimonial, and thus, trial counsel could not be ineffective for failing to object on confrontation grounds since the court would have overruled the objection. Subsequently, this court concluded that Dixon was not deprived of effective assistance of counsel because he did not establish prejudice. *See Dixon I*, No. 2017AP1252-CR, ¶16.

¶16 Dixon now contends that his postconviction attorney was ineffective for failing to raise this challenge as plain error and/or as prosecutorial misconduct. As the circuit court suggested in its denial of Dixon's WIS. STAT. § 974.06 motion, this claim is simply a repackaging of the issue raised in Dixon's direct appeal, and thus, is procedurally barred. A defendant may not re-litigate an issue previously litigated "no matter how artfully the defendant may rephrase the issue." *State v. Witkowski*, 163 Wis. 2d 985, 990, 473 N.W.2d 512 (Ct. App. 1991). Labeling this claim as "plain error" or "prosecutorial misconduct" is simply changing the name of the claim, not the claim itself. An appellant may not re-litigate an issue that was previously raised in a direct appeal, nor may an issue be re-litigated every time a new legal theory is advanced. *Id.*

¶17 Dixon admits that the circuit court addressed the confrontation claim in its denial of his WIS. STAT. RULE 809.30 postconviction motion. Dixon, however, suggests that he can re-litigate this claim because this court only decided that counsel was ineffective and did not directly address whether the out-of-court statements were testimonial. Dixon does not cite any law for the proposition that he can re-litigate a claim in a WIS. STAT. § 974.06 motion that the postconviction court decided, but that this court did not address. We do not develop arguments for parties. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

7

### C. S.E.'s non-appearance at trial

¶18    Dixon was convicted of two counts of second-degree sexual assault of a child for having intercourse with S.O. and D.D.  During the trial, two counts of second-degree sexual assault were dismissed after a third victim, S.E., sent a text message to a victim witness advocate stating that she had changed her mind and was returning to Pennsylvania.[6]  The prosecutor indicated that he would not introduce any medical evidence or DNA evidence related to S.E.

¶19    At the conclusion of the trial, the trial court informed the jury that the two counts related to S.E. were dismissed.  The court also instructed the jury that "you should not consider any facts or comments that you heard regarding those counts during the opening statements by either of the parties" and "[t]hey shouldn't be considered for any purposes whatsoever."

¶20    Dixon contends that his trial counsel and postconviction counsel were ineffective for failing to investigate S.E.  According to Dixon, Detective Branco Stojsavljevic fabricated reports about S.E.'s allegations of sexual assault, and the State's representation that S.E. had changed her mind about testifying was also fabricated.

¶21    Even if we assume that the information about S.E. was fabricated and counsel performed deficiently—and we emphasize that we are not making these findings—Dixon has not established that he was prejudiced.  *See Romero-Georgana*, 360 Wis. 2d 522, ¶41.  The two counts related to S.E. were dismissed,

---

[6] Another count of second-degree sexual assault, which alleged that Dixon had sexually assaulted T.S. in 2008, was dismissed prior to the start of the trial because the State was unable to secure T.S.'s appearance.

and the court instructed the jury not to consider any facts or comments from the openings statements related to S.E. "Jurors are presumed to have followed jury instructions." *State v. LaCount*, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780.

¶22    Moreover, there is not a reasonable probability that the jury would have acquitted Dixon of sexually assaulting S.O. and D.D.  *See Romero-Georgana*, 360 Wis. 2d 522, ¶41.  As the circuit court observed, the DNA evidence in this case was "damning."  At trial, DNA analyst Lisa Treffinger testified that semen was recovered from S.O.'s sanitary pad, and the DNA profile of the semen matched Dixon's DNA profile.  Treffinger additionally testified that the chance of finding another person with Dixon's DNA profile was one in 241 quintillion people.

¶23    Similarly, DNA analyst Brittany Paulson testified that she recovered DNA from semen on D.D.'s jeans, and that the DNA profile from the semen matched Dixon's DNA.  Paulson also testified that the chance of finding another person with Dixon's DNA profile was one in 241 quintillion people.  Thus, we conclude that the record conclusively demonstrates that Dixon is not entitled to relief on this claim.  *See Ruffin*, 401 Wis. 2d 619, ¶28.

### D. Expert Testimony on DNA evidence

¶24    Dixon next contends that his trial counsel was ineffective for failing to present expert testimony on the DNA evidence.  Even if we assume, however, that Dixon's trial counsel did not consult with a DNA expert, Dixon has not identified what the expert's testimony would have been or how it would have rebutted the State's DNA evidence.  *See Allen*, 274 Wis. 2d 568, ¶23 (stating that a postconviction motion must "allege the five 'w's' and one 'h'; that is, who,

what, where, when, why, and how" as to the defendant's claims). Thus, Dixon's claim is conclusory. A defendant is not entitled to relief based on conclusory allegations. *Id.*, ¶9.

### E. Interrogation Video

¶25 Dixon also contends that his trial counsel was ineffective for failing to obtain a copy of Dixon's police interrogation video, and moving to suppress the DNA sample obtained during the interrogation. According to Dixon, Detective Stojsavljevic made the following statements during the interrogation, including that: (1) "If you've got nothing to hide, you'll give us a sample"; (2) "If you don't, that will be used against you"; and (3) Dixon would be "free to leave" if he provided a sample.

¶26 Dixon first argues that Detective Stojsavljevic's statements violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Under *Miranda*, a suspect may not be subjected to a custodial interrogation until he or she is "warned that he has a right to remain silent, that any statement he [or she] does make may be used as evidence against him [or her], and that he [or she] has a right to the presence of an attorney, either retained or appointed." *Id.* at 444. Dixon, however, does not allege that the police failed to administer the *Miranda* warnings. Accordingly, Dixon has not alleged sufficient material facts that there was a *Miranda* violation, and thus, the record conclusively shows that he is not entitled to relief on this claim. *See Ruffin*, 401 Wis. 2d 619, ¶28.

¶27 Next, Dixon suggests that Detective Stojsavljevic's statements rendered his consent to provide a DNA sample involuntary, which amounted to an illegal search and seizure. We disagree. At trial, under oath, Dixon testified that "I voluntarily gave [Detective] Stojsavljevic my DNA because I had nothing to

hide." This directly rebuts Dixon's claim that his consent to provide a DNA sample was involuntary. Thus, we conclude that the record conclusively shows that a motion to suppress would be without merit. *Id.* Accordingly, we reject Dixon's claim that trial counsel was ineffective. *State v. Wheat*, 2002 WI App 153, ¶14, 256 Wis. 2d 270, 647 N.W.2d 411 ("Failure to raise an issue of law is not deficient performance if the legal issue is later determined to be without merit.").

¶28 In addition, Dixon argues that his suppression claim is reviewable as plain error. "The plain error doctrine allows appellate courts to review errors that were otherwise waived by a party's failure to object." *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77. The error that was not objected to must be "fundamental, obvious, and substantial" to be deemed plain error. *Id.*, ¶23. As stated above, Dixon testified under oath that his DNA was obtained voluntarily. Thus, we are not persuaded that the allegation that Dixon's DNA was obtained through coercion was "fundamental, obvious, and substantial." *See id.*; *State v. Miller*, 2012 WI App 68, ¶18, 341 Wis. 2d 737, 816 N.W.2d 331 (stating that the plain error doctrine is used "sparingly").

### F. Collection of DNA evidence in 2012

¶29 Dixon next contends that trial counsel was ineffective for failing to investigate whether the State collected DNA from him in 2012. According to Dixon, if trial counsel had investigated the 2012 DNA collection, it would have revealed that the State's claim is a "fabrication."

¶30 On direct appeal, in Dixon's supplemental postconviction motion, postconviction counsel contended that the State committed a *Brady* violation when it failed to disclose discovery material regarding the collection, transportation, and

testing of the 2012 DNA sample. In pertinent part, the motion alleged that "Dixon maintains that no such sample from 2012 existed and that no such sample was transported to the crime lab for analysis and comparison."

¶31 After Dixon made this claim, the State filed police reports, a form signed by Dixon consenting to DNA swabs, a chain of custody form, and a crime laboratory report—all reflecting that Dixon provided police with his DNA when he was arrested in 2012. Based on the State's response, postconviction counsel informed the circuit court that he was withdrawing his claim.

¶32 Given that Dixon previously challenged the existence of a DNA sample from 2012 in his supplemental motion, we conclude that Dixon's claim is procedurally barred. *See* WIS. STAT. § 974.06(4); *Witkowski*, 163 Wis. 2d at 990. Moreover, Dixon's § 974.06 motion does not address the police reports, his signed consent form, the chain of custody form, or the laboratory reports reflecting that he provided a DNA sample in 2012. We decline to address undeveloped arguments. *Pettit*, 171 Wis. 2d at 646-47.

### G. Limitations on Dixon's Trial Testimony

¶33 Prior to Dixon's testimony, the State objected to any questions about Dixon's lack of a prior criminal record. Dixon's trial attorney agreed not to ask this question, and the trial court instructed Dixon that he could not tell the jury that he had never been convicted of a crime. The trial court additionally instructed Dixon that he could not talk about how his DNA "wasn't ever collected or any of those things."

¶34 To start, Dixon contends that he should have been permitted to tell the jury that he had never been convicted of a crime in order to establish that his

DNA was not in the Combined DNA Index System (CODIS) databank. We disagree. The absence of a criminal record is not evidence of a person's law-abiding character. *See State v. Bedker*, 149 Wis. 2d 257, 269, 440 N.W.2d 802 (Ct. App. 1989); WIS. STAT. § 904.04. Moreover, the record does not demonstrate that anyone suggested that Dixon's DNA was in the CODIS databank. Thus, Dixon's testimony about his lack of a conviction was irrelevant and inadmissible and we do not discern any error. *See* WIS. STAT. § 904.02 ("Evidence which is not relevant is not admissible.").

¶35  Dixon also suggests that he should have been permitted to testify that his DNA was *not* collected in 2012. Again, we disagree. The complaint and the preliminary hearing testimony reflected that the police collected DNA from Dixon in 2012. Moreover, as discussed above, Dixon's WIS. STAT. § 976.04 motion does not address the police reports, his signed consent form, the chain of custody form, or the laboratory reports reflecting that he provided a DNA sample in 2012.

¶36  In addition, Dixon contends that trial counsel told him that he could not testify that he did not have sexual intercourse with D.D. and S.O., and that he could only testify that he did "not recall." As the circuit court found, given the strength of the DNA evidence, there is no reasonable probability that the testimony that "I didn't sexually assault those women" instead of "I don't recall doing anything of that nature" would have resulted in an acquittal. *See Romero-Georgana*, 360 Wis. 2d 522, ¶41. As discussed in detail above, at trial, DNA analyst Treffinger testified that the DNA profile of the semen from S.O.'s sanitary pad matched Dixon's DNA profile. In addition, DNA analyst Paulson testified that the DNA profile from the semen on D.D.'s jeans matched Dixon's DNA.

13

Further, both analysts testified that the chance of finding another person with Dixon's DNA profile was one in 241 quintillion people.

### H. Eyewitness Identification Instruction

¶37    Dixon contends that trial counsel was ineffective for failing to request WIS JI—CRIMINAL 141 (2013), which addresses eyewitness identification testimony.[7] In particular, the instruction advises the jury that they should consider the reliability of any identification made by a witness, and the credibility of a witness making an identification. *See id.*

¶38    In this case, however, as discussed above, the State relied on DNA evidence to prove that Dixon had sexually assaulted D.D. and S.O. It did not rely on eyewitness evidence to prove that Dixon sexually assaulted D.D. and S.O. As a result, the absence of this instruction did not misstate the law or misdirect the jury. Thus, trial counsel was not ineffective for failing to request this instruction. *State v. Ziebart*, 2003 WI App 258, ¶17, 268 Wis. 2d 468, 673 N.W.2d 369.

### I. Postconviction Discovery Request

¶39    Finally, Dixon contends that this court should issue an order compelling the State to provide a copy of his interrogation video or remand with directions to the circuit court to do so.

---

[7] Dixon also suggests that the failure to give WIS JI—CRIMINAL 141 constitutes plain error. Dixon, however, does not develop an argument that this failure constitutes plain error. We do not address undeveloped arguments. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶40 "[A] defendant has a right to post-conviction discovery when the sought-after evidence is relevant to an issue of consequence." ***State v. O'Brien***, 223 Wis. 2d 303, 321, 588 N.W.2d 8 (1999). Evidence is consequential "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ***Id.*** at 320-21. "'The mere possibility that an item of undisclosed information might have helped the defense' is not enough." ***Ziebart***, 268 Wis. 2d 468, ¶32 (citation omitted).

¶41 Here, Dixon has failed to demonstrate that the video's content was "relevant to an issue of consequence." ***O'Brien***, 223 Wis. 2d at 321. Had the video been produced, there is not a reasonable probability that Dixon would have been acquitted. ***Id.*** Once again, Dixon's sworn trial testimony that he voluntarily provided his DNA undermines his claim that his DNA was obtained as a result of coercion during the interrogation.

## CONCLUSION

¶42 Therefore, for the reasons stated above, we reject each of Dixon's claims, and we conclude that the circuit court properly denied the WIS. STAT. § 974.06 motion without an evidentiary hearing.

> *By the Court.*—Order affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.