COURT OF APPEALS
DECISION
DATED AND FILED

May 16, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1252-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF147

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

V.

DANNY ARTHUR WRIGHT,

  DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Douglas County: GEORGE L. GLONEK, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1  GILL, J.  Danny Arthur Wright appeals a judgment convicting him, following a jury trial, of three crimes, including first-degree sexual assault by use or threat of use of a dangerous weapon. Wright argues that the circuit court erroneously exercised its discretion by allowing a police detective to testify as an

expert on stun guns, their relationship to Tasers, and their general effect on the human body. The State contends that the court properly exercised its discretion by allowing the detective's testimony to be presented at trial. In the alternative, the State asserts that any error in permitting the detective's expert testimony was harmless.

¶2    We conclude that the circuit court did not erroneously exercise its discretion by allowing the detective to testify as an expert. The State offered the detective's testimony as expositional expert testimony, and the court properly decided the issue on that basis. We therefore need not reach the harmless error issue and affirm Wright's judgment of conviction.

## BACKGROUND

¶3    The State charged Wright with one count of first-degree sexual assault by use or threat of use of a dangerous weapon in violation of WIS. STAT. § 940.225(1)(b) (2021-22),[1] one count of strangulation and suffocation, and one count of misdemeanor battery. According to the criminal complaint, Laura[2] informed law enforcement that she and Wright were at a casino, and, upon returning to Wright's residence, Wright accused Laura of stealing some of his methamphetamine. As a result, Wright punched and kicked Laura, struck her with a metal broom handle, and "zapped" her with a ZAP Stick stun gun (hereinafter,

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4), we use a pseudonym when referring to the victim in this case.

"the stun gun") at least twenty-five times.[3] Laura also told police that Wright, among other acts, forced his penis into her mouth and penetrated her anus with his penis without her consent. The entire incident was recorded on Wright's cellphone, and police were later able to obtain the video following the execution of a search warrant. Police also obtained the stun gun used in the assault.

¶4 Prior to trial, the State submitted to the defense a report from Detective Michael Jaszczak indicating that the State intended to call Jaszczak as an expert witness on the stun gun used by Wright. In response, Wright filed a motion in limine asking the circuit court to prevent Jaszczak from giving expert opinion testimony at trial.

¶5 At a pretrial hearing on Wright's motion in limine related to Jaszczak's expert testimony, the State clarified that the purpose for calling Jaszczak was to ask him "what happens when electrical weapons such as stun guns are deployed." Jaszczak testified regarding his background, education, and experience. He stated that he had been a police detective with the Superior Police Department for over twenty-five years; a firearms instructor since 1999; a Defensive and Arrest Tactics instructor since 2003; a Taser instructor since 2007; an adjunct instructor for firearms and use-of-force training for Wisconsin Indianhead Technical College; and a member of the Wisconsin State Tactical Skills Advisory Committee "that decided on where the Taser was to be placed on the use of force continuum in the State." Jaszczak testified that he not only received training on "how a Taser works, how a stun gun works, [and] the

---

[3] The ZAP Stick used in this case is a brand name of a stun gun manufactured by Personal Security Products, Inc.

differences between the two," but as an instructor, he had also taught others about the same. Jaszczak testified that he deployed a Taser once in the field and "probably over a hundred times" in training. Jaszczak added that he had been "tased" as part of his training.

¶6 When asked about the effects of Tasers and stun guns, Jaszczak explained that a "Taser is different than a stun gun, but, generally an electric weapon like that … causes an involuntary muscle contraction within the body, and it oftentimes immobilizes that muscle." A Taser has "two probes that are propelled out of the gun" and continuously separate until the probes make contact with a subject, at which point electricity goes between the probes. Conversely, a stun gun has two electrical contact points "very close to each other" that do not propel out. Further, the stun gun used in this case was a "7 watt" electric weapon, while a Taser is generally a "26 [w]att" electric weapon.

¶7 Jaszczak also testified that he inspected the stun gun used in this case and its manual. The manual, which was admitted into evidence during the hearing, outlined three types of "blasts" the stun gun could perform. A "short blast (1/4 second) will startle an attacker, cause minor muscle contractions and can have a repelling effect." A "moderate blast (1-4 seconds) can cause [an] attacker to fall and can cause mental confusion. It may make the assailant unwilling to continue [the] attack, but they will be able to get up almost immediately." Lastly, a "full blast of five seconds or more can immobilize an attacker, causing disorientation, loss of balance, falling to the ground, weakness and leaving them dazed for several minutes afterwards." Regarding the three types of blasts, Jaszczak stated that the descriptions listed in the manual were consistent with his training and experience with what happens when someone uses a stun gun. The circuit court questioned Jaszczak on whether he knew that a stun gun "may cause

someone to be immobilized … based only on the manual or … something that you know also based upon your training and experience?" Jaszczak replied that his knowledge about the effects that a stun gun has on a person was "based on [his] training and experience."

¶8 On cross-examination, Jaszczak conceded that he did not have any training and experience with the particular stun gun model used in the assault; did not have a degree in the area of human physiology; did not publish papers or write articles regarding the stun gun or similar devices; did not conduct experiments with the stun gun; and was unaware of "any studies analyzing the effect of the [stun gun] on a human being" or on animals.

¶9 The State argued that "a lot of what [Jaszczak] would be testifying to [at trial] is not an expert opinion. For example, I'm not [going to ask Jaszczak], does this stun gun qualify as an electric weapon under Wisconsin Law?" Instead, the State contended that it would ask, "based on his training and his own experience[,] what happens when electrical weapons such as stun guns are deployed because of the elements that are required to be proved." The defense argued that, under *Daubert*,[4] Jaszczak lacked the qualifications to be considered an expert on the effect that a stun gun has on a human. The circuit court asked the State if it was "intending to ask [Jaszczak] whether or not this stun gun meets the legal definition" of a dangerous weapon under WIS. STAT. §§ 940.225(1)(b) and 939.22(10). The State answered that it was not seeking to admit Jaszczak's testimony for that purpose.

---

[4] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

¶10    The circuit court denied Wright's motion, reasoning that

> qualifications to render opinions can be based on a number of things, not the least of which is based upon, you know, training and experience. And I believe based upon the testimony I've heard and the training and experience of Mr. Jaszczak, that he certainly has the requisite qualifications to render the opinion.
>
>     ….
>
> [T]here may be [an] issue here with regard to the weight to give that opinion, and that certainly is something that's open to cross-examination, and you'll have that opportunity, but as far as admissibility goes, the [c]ourt is going to find that, at least what I've heard here today, that that testimony is admissible and can be considered by the [c]ourt, but, again, I want to make sure that the questions are framed in a manner where he's not rendering an opinion, a legal opinion, based on the definition.

The court therefore ruled that Jaszczak was permitted to give expert testimony regarding stun guns, their relationship to Tasers, and the general effect that stun guns have on the human body.

¶11    The case proceeded to a jury trial. Consistent with the circuit court's pretrial ruling, Jaszczak testified to the general characteristics of Tasers and stun guns. His trial testimony largely echoed his testimony from the motion in limine hearing, explaining his training and experience in law enforcement and with electric weapons and the difference between a Taser and a stun gun. Regarding a stun gun's effect on a human, Jaszczak testified:

> In a stun gun, it's a—because the electricity only goes between those two electrodes, and it is oftentimes a very short distance apart. It is a pain compliance tool that immobilizes or that oftentimes tightens up the muscles right at the point of contact.
>
> If the stun gun is used on a nerve bundle in the body, it oftentimes locks them up briefly depending on the length or the duration of the stun, if you will.

¶12 Afterward, the State handed Jaszczak the stun gun recovered from Wright's home and had Jaszczak demonstrate using the stun gun to the jury. On cross-examination, Jaszczak acknowledged that he did not write any papers or articles on any stun gun model, including the particular stun gun model in question; did not conduct any experiments with the stun gun; was not aware of any studies analyzing the effect of the stun gun model on humans; and was not aware of any studies showing that the use of the stun gun model on a human causes "immobiliz[ation] or incapacitat[ion]."

¶13 Following the evidentiary portion of the trial, the circuit court read to the jury the standard form jury instruction regarding expert opinion testimony, which states:

> Ordinarily, a witness may testify only about facts. However, a witness with specialized knowledge in a particular field may give an opinion in that field.
>
> In determining the weight to give to this opinion, you should consider:
>
> > • the qualifications and credibility of the witness;
> >
> > • the facts upon which the opinion is based; and
> >
> > • the reasons given for the opinion.
>
> Opinion evidence was received to help you reach a conclusion. However, you are not bound by any witness's opinion.

*See* WIS JI—CRIMINAL 200 (2019).

¶14 The jury found Wright guilty of all three counts as charged. Wright appeals.

**DISCUSSION**

¶15    "It is within the circuit court's discretion whether to admit proffered expert testimony." ***State v. Dobbs***, 2020 WI 64, ¶27, 392 Wis. 2d 505, 945 N.W.2d 609.  We will not reverse a circuit court's discretionary decision if the decision "'had a reasonable basis,' and 'was made in accordance with accepted legal standards and in accordance with the facts of record.'" ***Id.*** (citation omitted).  In fact, we may "search the record for reasons to sustain [a] circuit court's exercise of discretion." ***State v. Pico***, 2018 WI 66, ¶15, 382 Wis. 2d 273, 914 N.W.2d 95 (citation omitted).  Furthermore, "[w]e accept [a] circuit court's findings of fact unless they are clearly erroneous." ***Dobbs***, 392 Wis. 2d 505, ¶32.

## I.  Admissibility standards for expert testimony

¶16    In 2011, the Wisconsin legislature amended the standards governing the admissibility of expert testimony "to expressly 'adopt the ***Daubert*** reliability standard embodied in Federal Rule of Evidence 702.'" ***Dobbs***, 392 Wis. 2d 505, ¶34 (citation omitted); *see also* WIS. STAT. § 907.02(1).  Following the 2011 amendment, "[t]he reliability of expert testimony ceased being a question for the jury and became a gatekeeping assessment for the [circuit] court." ***State v. Hogan***, 2021 WI App 24, ¶23, 397 Wis. 2d 171, 959 N.W.2d 658.  Section 907.02(1) now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion *or otherwise*, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.

(Emphasis added.) Consistent with § 907.02(1), our supreme court has stated that when considering whether to admit expert *opinion* testimony, a circuit court should consider five factors:

> (1) whether the scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue; (2) whether the expert is qualified as an expert by knowledge, skill, experience, training, or education; (3) whether the testimony is based upon sufficient facts or data; (4) whether the testimony is the product of reliable principles and methods; and (5) whether the witness has applied the principles and methods reliably to the facts of the case.

*Dobbs*, 392 Wis. 2d 505, ¶43 n.20; *see also* ***State v. Jones***, 2018 WI 44, ¶29, 381 Wis. 2d 284, 911 N.W.2d 97.

¶17 In addition to expert opinion testimony, a circuit court may admit expert exposition testimony. In ***Dobbs***, our supreme court held that "the ***Daubert*** reliability standard expressly adopted in WIS. STAT. § 907.02(1)" did not alter "Wisconsin's long-standing practice of allowing expert exposition testimony." *See* ***Dobbs***, 392 Wis. 2d 505, ¶¶35, 42. In particular, § 907.02(1) permits "an expert witness to testify in the form of an opinion '*or otherwise*.'" ***Dobbs***, 392 Wis. 2d 505, ¶42 (emphasis added; quoting § 907.02(1)). The ***Dobbs*** court held that "the phrase 'or otherwise' signifies that expert testimony may take a form other than an opinion." ***Id.***, ¶36.

¶18 Exposition testimony, in contrast to opinion testimony, refers to "an expert witness testifying in the form of an educational lecture on general principles." ***Id.***, ¶31 (citing Daniel D. Blinka, *Expert Testimony and the Relevancy Rule in the Age of Daubert*, 90 MARQ. L. REV. 173, 219 (2006) ("Expository testimony consists of a lecture or explanation on a specialized

subject such as economics, accounting, engineering, medicine, or psychology.")). Exposition testimony under WIS. STAT. § 907.02(1) *does not* involve "explicitly applying those principles to, or even having knowledge of, the specific facts of the case. If an expert testifies in the form of an opinion, then the expert must apply the principles and methods reliably to the facts of the case." *Dobbs*, 392 Wis. 2d 505, ¶42. Expert exposition testimony is better suited for a jury than expert opinion testimony "where [a circuit] court is convinced that a jury, once provided with background information, is as capable as the witness in applying [the] knowledge to the specific facts of the case." 7 DANIEL D. BLINKA, WISCONSIN PRACTICE SERIES: WISCONSIN EVIDENCE § 702.602 (4th ed. 2022).

¶19 Although exposition testimony differs from opinion testimony in that the expert is not applying his or her expertise to the specific facts of a case, "the admissibility of exposition testimony pursuant to WIS. STAT. § 907.02(1) is not automatic." *Dobbs*, 392 Wis. 2d 505, ¶43.

> When expert testimony is proffered in the form of an exposition on general principles, the circuit court, as gatekeeper, must consider the following four factors: (1) whether the expert is qualified; (2) whether the testimony will address a subject matter on which the factfinder can be assisted by an expert; (3) whether the testimony is reliable; and (4) whether the testimony will "fit" the facts of the case.

*Id.*, ¶43 & n.20. "These considerations differ slightly from the considerations to admit opinion testimony of an expert." *Id.*, ¶43 n.20. The party proffering the exposition testimony "bears the burden of satisfying each of these preliminary questions by a preponderance of the evidence." *Id.*, ¶43.

¶20 "Reliability" "outside the scientific context," is broadly and "flexibl[y]" assessed using five factors:

(1) "Whether experts are 'proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying'"; (2) "Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion"; (3) "Whether the expert has adequately accounted for obvious alternative explanations"; (4) "Whether the expert 'is being as careful as he would be in his regular professional work outside his paid litigation consulting'"; and (5) "Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give."

*Hogan*, 397 Wis. 2d 171, ¶24 (citation omitted). A circuit court "may consider some, all or none of the factors listed to determine whether the expert evidence is reliable." *Id.* (citation omitted). For example, a circuit court can rely on a purported expert's personal knowledge and experience, which "may form the basis for expert testimony." *Id.*, ¶25.

¶21 "Fit" is largely related to relevance, and "[w]hether expert testimony 'fits' a case turns on whether it is 'sufficiently tied to the facts of the case' such that 'it will aid the jury in resolving a factual dispute.'" *Dobbs*, 392 Wis. 2d 505, ¶44 (citation omitted). Expert testimony will "aid" the jury "if it concerns a matter beyond the understanding of the average person, assists the jury in understanding facts at issue, or puts the facts in context." *Id.* (citation omitted).

## II. The circuit court did not erroneously exercise its discretion by allowing Jaszczak to testify as an expert.

¶22 Wright's arguments on appeal are largely based on the circuit court's failure to expressly consider the five main factors for the admissibility of expert

11

*opinion* testimony.[5] He contends that the court "failed to reference, cite, or apply the relevant legal standards" and only considered "one of the five required 'determinations'" as laid out in *Jones*. The State argues, however, that Jaszczak's testimony was expositional in nature. As such, the State contends that the court was not required to consider the factors related to expert opinion testimony. *See Dobbs*, 392 Wis. 2d 505, ¶43 n.20; *Jones*, 381 Wis. 2d 284, ¶29.

¶23 As explained previously, exposition testimony involves an expert "testifying in the form of an education lecture on general principles" "without explicitly applying those principles to … the specific facts of the case." *See Dobbs*, 392 Wis. 2d 505, ¶¶31, 42. An example of exposition testimony would be "where a doctor defines the term 'compressed disc' while discussing back injuries." *Expert Testimony and the Relevancy Rule in the Age of Daubert*, *supra*, at 219; *see also Hogan*, 397 Wis. 2d 171, ¶¶16, 27 n.8 (expert testimony was exposition testimony where expert testified regarding "the characteristics of [human] trafficking victims and the methods of traffickers" but "did not draw any conclusions regarding" the particular case). Conversely, opinion testimony would be where the "doctor also testifies that the plaintiff had 'in fact' suffered a

---

[5] Because we conclude that Jaszczak's testimony was expositional, we will not address Wright's arguments regarding expert opinion testimony consideration four—whether the testimony is the product of reliable principles and methods—which does not overlap with the four considerations that apply to expert exposition testimony. *See State v. Dobbs*, 2020 WI 64, ¶43 n.20, 392 Wis. 2d 505, 945 N.W.2d 609. Where there is overlap between the considerations for expositional and opinion testimony, we will apply Wright's arguments to the best of our ability.

To the extent we do not address every single one of Wright's arguments on appeal, we deem them to be either undeveloped or conclusory. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

compressed disc."[6]  *Expert Testimony and the Relevancy Rule in the Age of Daubert*, *supra*, at 219.

¶24    We agree with the State that "Jaszczak testified about the general characteristics of electronic weapons, and more specifically stun guns, but did not opine on the ultimate issue of whether the stun gun used by Wright satisfied the statutory definition of 'dangerous weapon.'"  Jaszczak's testimony was generic. His testimony did not provide the jury with an opinion as to whether the particular stun gun in question "immobilized or incapacitated" Laura as required for the State to prove first-degree sexual assault under WIS. STAT. § 940.225(1)(b).  In fact, the defense highlighted Jaszczak's failure to give such an opinion to the jury, affirming during its cross-examination of Jaszczak that he was not aware of any studies showing what effect the model of stun gun in question has on a human or whether it causes "immobiliz[ation] or incapacitat[ion]."

¶25    Wright argues that the State wants to "have its cake and eat it too," contending that the State desired Jaszczak's testimony to be expositional but also wanted him to "opine that the device in question was designed to 'immobilize' [Laura]."  We disagree.  As explained, Jaszczak never testified as to whether the stun gun was designed to immobilize or that it did so to Laura; instead, he testified to the general characteristics of a stun gun and its effect generally on humans as compared to a Taser.

---

[6] Experts can be retained to offer both exposition and opinion testimony, but an expert can be used solely for the former.  Daniel D. Blinka, *Expert Testimony and the Relevancy Rule in the Age of Daubert*, 90 MARQ. L. REV. 173, 219 (2006).

¶26 We also agree with the State that the circuit court did not erroneously exercise its discretion by allowing Jaszczak to testify as an exposition expert about a stun gun's effect on a human. Again, before a circuit court can permit expert exposition testimony, it must consider the four requirements outlined in **Dobbs**. To begin, the court must have considered whether Jaszczak was qualified to give the exposition testimony. *See **Dobbs***, 392 Wis. 2d 505, ¶43. In this context, Jaszczak's qualifications to testify are partially tied to whether his testimony was reliable because the court based its decision on Jaszczak's personal knowledge and experience.[7] *See **Hogan***, 397 Wis. 2d 171, ¶¶24-25, 29. "To assess reliability in this context, 'the witness must explain how [his or her] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" ***Id.***, ¶25 (citation omitted).

¶27 In its oral ruling on the motion in limine, the circuit court stated that Jaszczak, through his "training and experience," "certainly has the requisite qualifications to render the opinion." Wright argues that this finding was clearly erroneous because "[m]issing from [Jaszczak's] pre-trial or trial testimony was any reliable basis for his opinion. Specifically, [Jaszczak] testified that someone

---

[7] As noted previously, Wright relies mostly on the standard regarding expert *opinion* testimony. Similarly, in the reliability realm, Wright urges us to apply the *scientific* reliability factors. As this court has explained, however, "our supreme court in [***Seifert v. Balink***, 2017 WI 2, 372 Wis. 2d 525, 888 N.W.2d 816,] considered how to assess reliability *outside the scientific context*" using the factors we articulated above. *See **State v. Hogan***, 2021 WI App 24, ¶24, 397 Wis. 2d 171, 959 N.W.2d 658 (emphasis added). As we explained in ***Hogan***, a circuit court "should not waste its time discerning, say, the 'known or potential rate of error' or the testability of" certain nonscientific testimony. ***Id.***, ¶30 (citation omitted). Similarly, here, it would have made little sense for the circuit court to analyze, for example, "the degree of acceptance within the relevant scientific community." *See **State v. Jones***, 2018 WI 44, ¶33, 381 Wis. 2d 284, 911 N.W.2d 97. A stun gun's use and its differences from a Taser will not have a "degree of acceptance within the … scientific community." *See **id.***

told him about the differences between Tasers and stun guns." Wright further contends that Jaszczak lacked the necessary qualifications to testify about the specific model of stun gun in question.

¶28 We disagree with Wright. Jaszczak testified to a litany of trainings and experiences, including over two decades of experience in law enforcement and separate training on the differences between a Taser and a stun gun. The fact that someone else trained and informed Jaszczak on the differences between Tasers and stun guns does not alter our analysis.[8] Furthermore, Jaszczak testified that the stun gun's manual was consistent with his training and experience regarding what happens when someone uses a stun gun.[9] The court had a reasonable basis to find that Jaszczak's training and experience qualified him to offer testimony regarding stun guns generally and that his testimony would be reliable.

¶29 The next consideration is whether Jaszczak's "testimony will address a subject matter on which the factfinder can be assisted by an expert." *See Dobbs*, 392 Wis. 2d 505, ¶43. This consideration is similar to whether the

---

[8] Wright contends that Jaszczak's testimony regarding the effects a stun gun has on the body, particularly if used on a "nerve bundle," is problematic because Laura "never testified about her muscles tightening up or Wright zapping her on a 'nerve bundle' or any other sort of effect that would conceivably meet the 'immobilize or incapacitate' legal definition of an electric weapon." We fail to see how Laura's testimony is relevant to our analysis regarding Jaszczak's expert exposition testimony. To the extent Wright is making a sufficiency of the evidence claim, we deem that argument forfeited. *See State v. Miller*, 2012 WI App 68, ¶17, 341 Wis. 2d 737, 816 N.W.2d 331.

[9] Wright states that Jaszczak's reliance on the stun gun's manual "begs the question: would a qualified and reliable expert be forced to rely on a consumer instruction manual as his [or her] source of authority." To the extent Wright is arguing that a consumer instruction manual cannot serve as a basis for the necessary qualifications to offer expositional testimony, we need not reach that issue. The issue here is whether Jaszczak had the necessary qualifications based on his training and experience. He did not rely solely on the stun gun's manual to opine on the effects the stun gun would have on a human.

expert's testimony will "fit" the particular facts of a case, which depends upon whether the testimony "will aid the jury in resolving a factual dispute." *Id.*, ¶44 (citation omitted). Testimony is helpful or fits "if it concerns a matter beyond the understanding of the average person, assists the jury in understanding facts at issue, or puts the facts in context." *Id.* (citation omitted). "Generalized expert testimony that is factually disconnected from the case is inadmissible because it does not assist the jury in rendering a verdict based on the material facts in issue." *Id.* (citation omitted).

¶30    As relevant to this appeal, the State charged Wright with a violation of WIS. STAT. § 940.225(1)(b), which prohibits "sexual contact or sexual intercourse with another person without consent of that person by use or threat of use of a dangerous weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a dangerous weapon." The term "dangerous weapon" includes "any electric weapon." WIS. STAT. § 939.22(10). An "electric weapon," in turn, is defined as "any device which is designed, redesigned, used or intended to be used, offensively or defensively, to immobilize or incapacitate persons by the use of electric current." WIS. STAT. § 941.295(1c)(a); *see also* WIS JI—CRIMINAL 1203 (2002).

¶31    We agree with the State that the average person likely does not know the difference between a Taser and a stun gun or how either affects the human body. *See Dobbs*, 392 Wis. 2d 505, ¶44. Jaszczak's testimony regarding what a stun gun does, and the implications of using a stun gun on a human, could therefore assist the jury in reaching its verdict as to whether Wright violated WIS. STAT. § 940.225(1)(b). In other words, Jaszczak's testimony could help the jury

determine whether the stun gun in this case could "immobilize or incapacitate" Laura.[10]

¶32     Wright compares this case to two recent cases—*Jones* and *Seifert*—to support his argument that the circuit court erroneously exercised its discretion in permitting Jaszczak to testify as an expert.  We do not find persuasive Wright's comparison of the facts in this case to those in *Jones* or *Seifert*.  Neither *Jones* nor *Seifert* dealt with the admission of expert exposition testimony—both dealt with the admission of expert opinion testimony.  As such, our supreme court in both cases analyzed whether the circuit courts applied the correct expert opinion testimony considerations and whether the courts did so while exercising their discretion.  *See Jones*, 381 Wis. 2d 284, ¶29; *Seifert*, 372 Wis. 2d 525, ¶18.

## CONCLUSION

¶33     In all, we conclude that Jaszczak's testimony regarding stun guns, their relationship to Tasers, and the general effect a stun gun has on a human body was exposition testimony.  As explained, the circuit court did not erroneously exercise its discretion by allowing Jaszczak to testify at Wright's trial in such a manner.  Because we conclude that the court did not erroneously exercise its discretion, we need not consider harmless error.

---

[10] Wright's only argument on whether the "testimony will address a subject matter on which the factfinder can be assisted by an expert," *see Dobbs*, 392 Wis. 2d 505, ¶43, is again focused on expert opinion testimony and "whether the scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," *see Jones*, 381 Wis. 2d 284, ¶29.  Wright's argument in this regard is that Jaszczak lacked "specialized knowledge" and was therefore not able to assist the trier of fact.  We have already determined, however, that Jaszczak was qualified.  Therefore, we need not address this argument further.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.