COURT OF APPEALS
DECISION
DATED AND FILED

May 9, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP151-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF21

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARTELL A. GREEN,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Forest County: LEON D. STENZ, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Martell A. Green appeals from a judgment convicting him, following a jury trial, of possession with intent to deliver more

than three but not more than ten grams of heroin; possession with intent to deliver more than fifteen but not more than forty grams of cocaine; and possession of drug paraphernalia, each as a party to the crime and as a repeater. He also appeals from the circuit court's order denying his postconviction motion for a new trial. Green appeals on several bases, including: (1) the court's denial of his severance motion; (2) the State's failure to comply with its discovery obligations; (3) the State's failure to correct false witness testimony; and (4) multiple claims of ineffective assistance of counsel. We reject all Green's claims and affirm.

## BACKGROUND

¶2  The State charged Green, Keotis Hamilton, and Devon Bell in a joint criminal complaint. It alleged that on January 8, 2019, Detective Sergeants Thomas Robinson and Anthony Crum,[1] with the Forest County Sheriff's Office, conducted a traffic stop on a vehicle driven by Green in which Hamilton and Bell were passengers. The detectives stopped the vehicle after observing that Green was not wearing his seatbelt. After performing a records check on all three men, officers learned that Hamilton had an outstanding arrest warrant. A search of the vehicle revealed a small scale that tested positive for cocaine as well as a "torn baggie."

¶3  The men were all arrested. At the jail, officers located both heroin and cocaine hidden inside Hamilton's rectum. No contraband was found on Green during a search. Green told law enforcement that he was offered $200 to drive

---

[1] As the State notes, the record contains two different spellings of Detective Sergeant Anthony Crum's name: Krum and Crum. We, like the State, will use the spelling of Crum that is used in the criminal complaint.

2

Bell and Hamilton to Forest County but that he otherwise had no knowledge of any drugs in the vehicle.

¶4 The State charged all three with possession with intent to deliver heroin, possession with intent to deliver cocaine, and possession of drug paraphernalia, each as a party to the crime and as a repeater. Pretrial, Green's defense counsel[2] filed several requests to sever the cases for trial.[3] Each time, the court denied Green's request, finding that the charges were "intrinsically intertwined" and that Green had failed to establish substantial prejudice. Furthermore, the court observed that any testimony from Hamilton regarding who owned the drugs would not be exculpatory, as Green was charged as a party to the crime. The court concluded that it had not been presented with any persuasive argument that the codefendants' trial defenses were antagonistic to one another.

¶5 The morning of trial, Hamilton entered guilty pleas. At that time, Green renewed his severance motion, arguing "inconsistent" and "antagonistic" defenses between Bell and himself. While noting that it believed that Green had previously sought severance from only Hamilton and not Bell, the circuit court denied the motion, maintaining that severance was not appropriate, as both Green and Bell planned to argue that Hamilton had the drugs without their knowledge and without implicating each other.

---

[2] For ease of reading, we will refer to Green's trial attorney as "defense counsel" and Green's postconviction attorney as "postconviction counsel."

[3] The State also filed a motion to sever, stating that it intended to use statements made by Hamilton against Green and Bell. *See* WIS. STAT. § 971.12(3) (2021-22). Later, however, the State withdrew its motion because the prosecutor had decided not to use Hamilton's statements. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶6      At trial, the State presented testimony from Hamilton that he, Green, and Bell drove from Milwaukee to Forest County to sell heroin and cocaine. Hamilton explained that his role was to "introduce people" to Green and Bell so they could purchase the drugs from Green and Bell because he "was familiar with the area," and, in exchange, Hamilton would receive half the money they made. According to Hamilton, Green and Bell already had the cocaine in the vehicle when they picked him up, and then the three of them obtained the heroin from a home in Milwaukee. Hamilton testified that when law enforcement executed the stop on their vehicle, Bell threw the drugs at him in the backseat where he had been sleeping, and he "picked them up and stuffed them up my butt, rear end."

¶7      Shavonn Tuckwab also testified for the State. According to Tuckwab, the men arrived at her home in Forest County around 4:00 a.m. Tuckwab testified that she did not know the men before they arrived, but she let them in and showed them to a bedroom where she then saw all three men packaging cocaine and heroin into small bags.[4] She testified that Green gave her heroin and crack cocaine.[5] Later that morning, the men left Tuckwab's home and were then stopped by law enforcement. Tuckwab admitted that she was a heroin addict, that she had recently relapsed, and that she was suffering drug withdrawal symptoms during her testimony.

¶8      Green's defense at trial was that the State could not meet its burden to prove that Green knew that Hamilton had drugs. Both defense counsel and

---

[4] Hamilton testified that only Green and Bell were packaging the drugs.

[5] Although Tuckwab testified at trial that Green gave her the drugs, she initially had told law enforcement that Hamilton gave her the drugs.

Bell's attorney sought to undermine Hamilton's and Tuckwab's credibility by highlighting the agreements they had made with the State in exchange for their testimony. In closing, defense counsel suggested Hamilton was framing Green to lessen his own responsibility. He also claimed that Tuckwab's story did not make sense and that she and Hamilton actually knew each other before the incident.

¶9      The jury found Green guilty of all three charges. The next day, the circuit court sentenced Green to concurrent sentences totaling twenty-six years.

¶10      Postconviction, Green moved for a new trial or, in the alternative, a new sentencing hearing. He claimed: (1) the circuit court erred by denying severance; (2) the court erred by denying Green's judicial substitution request; (3) the State failed to comply with its discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963); (4) the court erred by admitting untimely disclosed evidence; (5) the State engaged in misconduct by failing to correct false witness testimony; (6) defense counsel provided ineffective assistance; and (7) Green's sentence was unduly harsh and excessive. The court held a *Machner*[6] hearing on the motion, wherein defense counsel and Crum testified. The court ultimately denied Green's motion for a new trial in an oral ruling and later by written order.[7] Green appeals.

---

[6] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[7] The circuit court granted Green's request for resentencing, which is not before us in this appeal.

5

## DISCUSSION

¶11 On appeal, Green renews the majority of the claims contained in his postconviction motion. For the reasons that follow, we deny each of his claims.[8]

## I. Severance

¶12 First, Green argues that we should grant him a new trial because the circuit court erred by denying his multiple requests to be tried separately from his codefendants.[9] WISCONSIN STAT. § 971.12(3) provides that a circuit court may order separate trials where the defendants' cases are initially joined if it appears that a defendant would be prejudiced by a joint trial. "[T]he proper joinder of criminal offenses is presumptively non-prejudicial." *State v. Prescott*, 2012 WI App 136, ¶13, 345 Wis. 2d 313, 825 N.W.2d 515. "In order to rebut that presumption, the defendant must show substantial prejudice to his [or her] defense; some prejudice is insufficient." *Id.* Severance is also required when the defendants intend to advance conflicting or antagonistic defenses or there would be presented at the trial an entire line of evidence relevant to the liability of only

---

[8] We note that Green has failed to comply with our Rules of Appellate Procedure. *See* WIS. STAT. RULE 809.19(1). The argument section of Green's brief-in-chief contains only rare citations to the record on appeal. *See* RULE 809.19(1)(e). Green's reply brief contains none. *See* RULE 809.19(1)(e), (4)(b). In fact, as we will explain below, we are unable to properly review some of Green's arguments based on his failure to support his position with citations to the record. We have no duty to scour the record to review arguments unaccompanied by adequate record citations. *See Tam v. Luk*, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (Ct. App. 1990). As a high-volume, appellate court, we are entitled to expect briefing by an attorney that follows the basic Rules of Appellate Procedure. We caution Green's postconviction counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

[9] Green does not appear to argue that the initial joinder of the cases for all three codefendants was improper. *See* WIS. STAT. § 971.12(2); *State v. Hoffman*, 106 Wis. 2d 185, 208, 316 N.W.2d 143 (Ct. App. 1982) ("The joinder statute is to be construed broadly in favor of initial joinder.").

one defendant. *State v. Shears*, 68 Wis. 2d 217, 234-35, 229 N.W.2d 103 (1975). We review a circuit court's severance decision for an erroneous exercise of discretion. *State v. Bettinger*, 100 Wis. 2d 691, 696, 303 N.W.2d 585 (1981).

¶13 On appeal, Green generally claims that he "struggle[d] … presenting his defense" at trial because some of Hamilton's statements that he wished to present "exculpate" Green but "inculpate" Bell. According to Green, his defense at trial was that "he wasn't a part of the conspiracy formed by Bell and Hamilton and that those two executed the crimes in question." Thus, Green asserts that the men had antagonistic defenses.[10]

¶14 We conclude that the circuit court did not erroneously exercise its discretion by denying Green's multiple severance motions. On appeal, Green renews his arguments that the court should have granted severance from Hamilton. In general, Green argues that his defense was antagonistic to Hamilton's defense because Hamilton had the drugs, and Green planned to argue that he had no knowledge of any illegal activity. However, once Hamilton entered his pleas, that issue became moot and could not serve as a continuing basis to sever Green's case for trial before the circuit court or as a basis to grant a new trial on appeal.

¶15 As to Green's arguments regarding severance from Bell, Green asserts that he was denied the benefit of "various statements made by Hamilton,"

---

[10] Postconviction counsel confirmed before the circuit court that Green's motion for a new trial with respect to severance was based on antagonistic defenses, rather than substantial prejudice to Green's defense.

which are "exculpatory to Green."[11] Defense counsel addressed the potential of using these statements before the circuit court, and Bell's counsel suggested that if defense counsel intended to use them, the statements would need to be redacted to protect his client. According to Green, "if redacted, Green would lose any benefit [as] the evidence would no longer support Green's defense," and while the statements ultimately were not used, "had the codefendants['] cases been severed for trial, those statements would have been used and would have impacted the outcome."

¶16    Defense counsel made this same argument before the circuit court on the first day of trial. Defense counsel explained to the court that Green's defense was "[p]otentially" that Hamilton and Bell "did it all," but he then clarified that "[m]y defense [is that] my client had no knowledge of this," which the court noted was "[e]xactly the same defense" as Bell's. When another severance discussion occurred the next day, defense counsel stated that he "might use" Hamilton's

---

[11] On appeal, Green does not identify which of Hamilton's statements he wished to present at trial; instead, he directs us to review defense counsel's arguments before the circuit court during the trial, citing to 315 pages of the appellate record, of which only a portion involves the parties' arguments. Even our review of the *Machner* hearing suggests that the circuit court was unsure about which of Hamilton's statements were at issue.

It appears, however, that the issue was narrowed to two statements: (1) a handwritten, unsigned note purportedly from Hamilton to Green dated June 2, 2019—referred to by the parties as a "kite note" because these types of notes are "pieces of paper that have been slung back and forth between jail cells"; and (2) a written statement given to law enforcement on a "voluntary statement form," dated June 4, 2019, from "Hamilton making reference that Martell Green did not know about the drugs but that … Devon Bell did." While the kite note was provided as an attachment to Green's postconviction motion and entered into the record at the *Machner* hearing, it does not appear, based on our review and Green's failure to cite the record, that Hamilton's June 4, 2019 statement was included in the record on appeal. It is Green's responsibility to ensure that the record on appeal is complete, and any missing material is presumed to support the circuit court's ruling. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26-27, 496 N.W.2d 226 (Ct. App. 1993).

statements, "depend[ing] on Mr. Hamilton's testimony." At that point, a long discussion ensued between the court and the parties regarding counsels' theory of the case. Ultimately, after the discussion, the court summarized Green's and Bell's defense as: "Hamilton is a liar." Defense counsel and Bell's counsel concurred. Thus, it was clear to the court, based on the parties' arguments, that Green and Bell planned to present the defense that neither of them were aware Hamilton had the drugs. Based on this record, the court's finding that Green's and Bell's defenses were not antagonistic was not clearly erroneous.

¶17 While Green claims on appeal that his defense at trial was that he was not part of the conspiracy formed by Bell and Hamilton, we agree with the State that this was not the defense he employed, nor was it the defense his counsel stated to the circuit court that he planned to employ at trial. Instead, our review of the record demonstrates that defense counsel argued that the State could not meet its burden to prove that Green was involved in a criminal "group venture." Defense counsel's discussions before the jury placed the blame entirely on Hamilton, without suggesting that Bell was also in league with Hamilton—Bell's counsel did the same. Despite Green's claims to the contrary, Green and Bell were not "placed in a position where they needed to defend themselves against one another." To the extent that Green is arguing that his defense would have been to blame Hamilton *and* Bell if severance had been granted, this is not the position he took before the circuit court. As our supreme court has explained, "[b]road assertions that the defenses of codefendants may conflict have been found inadequate"; instead, the defendant must "allege antagonism with sufficient specificity." *Haldane v. State*, 85 Wis. 2d 182, 190, 270 N.W.2d 75 (1978), *abrogated on other grounds by State v. Salinas*, 2016 WI 44, ¶30, 369 Wis. 2d 9,

879 N.W.2d 609. Thus, the court's decision was not clearly erroneous based on the theory of defense Green provided at the time.

¶18 Further, we agree with the State that Hamilton's statement implicating Bell would also have implicated Green because the men were charged as a party to the crime.[12] While we are unable to consider the contents of Hamilton's June 4, 2019 statement, as it is not in the record, Hamilton's kite note states, among other things, "Me an you locked in we both know that wasn't [our] shit." The issue at trial was whether Green was guilty as a member of a conspiracy or for aiding and abetting the crime, not whether the drugs belonged to Green. Thus, Hamilton's kite note does not exculpate Green because it does not state that Green was not involved in a plan to sell the drugs. Accordingly, Green cannot demonstrate that the circuit court erred in refusing to grant severance.[13]

## II. *Brady* Violation

¶19 Green next argues that the State failed to provide *Brady* evidence and that the circuit court erred by admitting evidence that the defense received on the first day of trial. A defendant has a Fourteenth Amendment due process right to disclosure of any favorable evidence in the State's possession that is "material

---

[12] WISCONSIN STAT. § 939.05(1) provides that "[w]hoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it." An individual may be found guilty of committing the crime where he or she directly committed the crime, intentionally aided and abetted the commission of the crime, or was a party to a conspiracy to commit the crime. Sec. 939.05(2); *see also* WIS JI—CRIMINAL 402 (2005).

[13] Green also argues that the circuit court erred by denying his request for judicial substitution. On appeal, he requests that we reverse and remand for a new trial and that we honor Green's substitution request on remand. As we do not conclude that the court erred, there is no need for remand; accordingly, we will not address this issue further.

either to guilt or to punishment," *see* **Brady**, 373 U.S. at 87, including disclosure of any evidence that may impeach one of the State's witnesses, **Giglio v. United States**, 405 U.S. 150, 154 (1972). "A **Brady** violation has three components: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material." **State v. Wayerski**, 2019 WI 11, ¶35, 385 Wis. 2d 344, 922 N.W.2d 468. "Evidence is not material under **Brady** unless the nondisclosure 'was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.'" **Wayerski**, 385 Wis. 2d 344, ¶36 (citation omitted). We review an alleged **Brady** violation claim under a mixed standard of review: we accept the circuit court's findings of fact unless clearly erroneous, but we independently review whether a due process violation occurred. **Wayerski**, 385 Wis. 2d 344, ¶35.

¶20 At first blush, Green's arguments on this claim appear insufficiently developed given that he asserts the State "failed to turn over information that *may or may not* be exculpatory and *could* constitute a violation of **Brady**." (Emphasis added.) In particular, Green identifies downloads from Bell's and Hamilton's cell phones that were in the possession of the State but were not made available to defense counsel prior to trial despite a discovery demand. Green claims that "[t]his evidence was obtained by [postconviction] counsel on December 8, 2020[,] after an additional request to the District Attorney's office was made." Green further asserts that "[t]he cell phone records do contain impeachment evidence that directly contradicts the trial testimony of both Ms. Tuckwab and Mr. Hamilton"

and that if defense counsel had access to these records, he could have used them to "undercut" the witnesses' credibility at trial.[14]

¶21 Unfortunately, and as the State also acknowledges, Green fails entirely to cite any portion of the appellate record to support his assertions about the cell phone records. Without that information, we cannot confirm what information the cell phone records may have contained. It is not our responsibility to search the record to seek out evidence in support of a party's argument.[15] *See Tam v. Luk*, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158 (Ct. App. 1990).

---

[14] According to Green, the cell phone records demonstrate the following:

> (1) Both Bell and Hamilton were in contact with Dakota Tuckwab, Ms. Tuckwab's brother, prior to the Forest County trip on January 8, 2019[;] (2) Hamilton had drug connections and ongoing drug dealings in Forest County prior to January 8, 2019[;] (3) Hamilton was in contact with Ms. Tuckwab prior to January 8, 2019[;] (4) Hamilton spoke with Ms. Tuckwab on January 8, 2019[; and] (5) Hamilton was in contact with Mr. Tuckwab following his arrest on January 8, 2019.

[15] We note that the State asserts that Tuckwab's and Hamilton's cell phone records are at issue, while Green states that Bell's and Hamilton's cell phone records are at issue. We are unable to confirm which is correct.

The State also alleges in its response brief that Green "provided the [circuit] court with a flash drive containing the cell phone logs from Tuckwab and Hamilton," and it cites the *Machner* hearing transcript in support of this statement. Our review of the *Machner* hearing transcript suggests that a flash drive was entered into evidence, but there was no mention that the flash drive contained the cell phone logs. Instead, postconviction counsel stated that the flash drive contained a recorded interview of Tuckwab, which had also been transcribed for the court.

The State correctly notes that a photograph of a flash drive is in the appellate record; however, the clerk of the circuit court did not provide the actual flash drive for our review.

(continued)

¶22 For its part, the State asserts that it "does not find any reference in the record of prior contact between Hamilton and Tuckwab. Any possible contact between Hamilton and Tuckwab's brother does not demonstrate that Tuckwab knew Hamilton. Green shows no evidence that Hamilton and Tuckwab knew each other." Further, Crum testified at the *Machner* hearing that he reviewed Hamilton's phone records, but he could not determine whether Hamilton and Tuckwab knew each other before the date of the crime, although he did testify that Hamilton knew Tuckwab's brother. Crum explained that an individual labeled "Shavonna" was in Hamilton's phone (Tuckwab's name is Shavonn), but Crum stated he never found communication between Hamilton and Tuckwab.

¶23 Under the circumstances, we conclude that Green has failed to meet his burden to prove that a *Brady* violation occurred. While it may be true that the State inadvertently failed to provide defense counsel with the cell phone record evidence, Green has provided no support for his claim that the evidence was favorable—i.e., that it was either exculpatory or impeaching—or material. In alleging that the evidence was material, Green argues that it could have been used to cross-examine Tuckwab and Hamilton. Defense counsel did, however, cross-examine Tuckwab about whether she knew the men and about the fact that she supposedly let three strangers into her home at 4:00 a.m. Defense counsel highlighted in closing argument the fact that Tuckwab's story about letting the men into her home in the middle of the night did not "make any sense."

---

We entered an order on April 3, 2023, requesting the flash drive from the clerk of circuit court to review whether the cell phone records were contained on the flash drive. After receiving the flash drive, we were unable to conduct a review, as the flash drive had been corrupted. Without access to the flash drive or any evidence in support of Green's assertions about what was contained in the cell phone records, we conclude that Green has failed to provide evidentiary support for his *Brady v. Maryland*, 373 U.S. 83 (1963), claim on appeal.

Accordingly, Green has not demonstrated that "the nondisclosure 'was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.'" *See* **Wayerski**, 385 Wis. 2d 344, ¶36 (citation omitted).

¶24 As to the evidence that was untimely received on the day of trial, the State notes that Green fails to explain exactly what evidence he believes the State failed to turn over. We, like the State, will assume that Green is referring to video recordings of Hamilton's statements to law enforcement. The discussion between the circuit court and the parties suggested that there were two recordings: one from November 18, 2019, and one that had been made days before trial (collectively, video recordings). Prior to trial, the State had provided defense counsel a written summary of Hamilton's interview from November 18, but the prosecutor admitted that his office had moved locations and he "missed sending out the disc." On December 12, 2019, the prosecutor also disclosed "a new report" to the defendants—that the prosecutor had also only just received— generated after Hamilton made another statement, but the prosecutor noted that he did not yet have the video recording of the statement.

¶25 Green received both video recordings on the morning of trial. At that time, defense counsel argued the untimely disclosure of the video recordings was "trial by surprise" and requested exclusion or a continuance. The circuit court denied the motion, concluding that the information in the video recordings had, in fact, been disclosed in advance of trial through the written reports. The court also told the defendants, however, to watch the video recordings and make a motion if the recordings contained anything that was not known to them. The court delayed Hamilton's testimony until after that review. Defense counsel later told the court

that he had reviewed the video recordings and saw "nothing that would require any kind of impeachment witnesses or subpoenas at this time."

¶26 It is also unclear from Green's briefing whether he is arguing a violation of *Brady* or a violation of WIS. STAT. § 971.23(1), as he cites to both without clarifying his argument on this allegedly untimely evidence. The State argues this issue based on the *Brady* three-part test. In doing so, it aptly notes that Green received the video recordings on the morning of trial; thus, the evidence was not actually suppressed. "*Brady* does not require pretrial disclosure of exculpatory evidence. *Brady* instead requires that the prosecution disclose evidence to the defendant in time for its effective use." *State v. Harris*, 2008 WI 15, ¶63, 307 Wis. 2d 555, 745 N.W.2d 397 (footnote omitted). Although Green claims on appeal that this process constituted a "trial by ambush," he does not develop a claim that the evidence was not received in time for its effective use at trial, especially given that defense counsel did not seek to use the evidence or further object after his review. Green also has not demonstrated that the video recordings were material, such that there was a reasonable probability the jury would have acquitted him had the State disclosed the video recordings earlier. *See Wayerski*, 385 Wis. 2d 344, ¶35. This *Brady* violation claim therefore fails.

¶27 To the extent Green is claiming a violation of WIS. STAT. § 971.23(1), we note that defense counsel made a statutory discovery demand for evidence under § 971.23, which requires that the prosecutor disclose certain material to the defendant within a reasonable time before trial. *See* § 971.23(1), (1)(e). The statute also provides that "[t]he court shall exclude any witness not listed or evidence not presented for inspection or copying required by this section, unless good cause is shown for failure to comply" and that "[t]he court may in appropriate cases grant the opposing party a recess or a continuance."

15

Sec. 971.23(7m)(a). A decision based on a "failure to comply with discovery requirements under [§] 971.23 is committed to the [circuit] court's discretion, and if there is a reasonable basis for the ruling, we do not disturb it." *See* **State v. Gribble**, 2001 WI App 227, ¶29, 248 Wis. 2d 409, 636 N.W.2d 488.

¶28   We conclude that the circuit court's decision to deny a continuance was not an erroneous exercise of discretion. First, the court found that the State had, in fact, provided Hamilton's "statements and written narrative" in advance of trial. However, even if we assume, without deciding, that the State violated WIS. STAT. § 971.23, we conclude that, based on this record, there was a reasonable basis for the court's decision to deny a continuance.[16] Here, the video recordings were not used at trial; defense counsel had received the written narratives of the interviews in advance of trial, so he was aware of what the video recordings contained; the court provided defense counsel the opportunity to review the video recordings prior to Hamilton's testimony to determine whether they contained information that could be used for impeachment purposes or if other witnesses might be necessary; and defense counsel, after reviewing the video recordings, did not object. Further, "[a discovery] violation is harmless when there is no 'reasonable possibility' that the violation contributed to the conviction." **State v. Rice**, 2008 WI App 10, ¶19, 307 Wis. 2d 335, 743 N.W.2d 517 (2007) (citation

---

[16] We are unclear if Green is also attempting to claim that the video recordings should have been suppressed, *see* WIS. STAT. § 971.23(7m)(a), as he claims that "the [circuit] court erred in admitting evidence that was untimely received by the defense on the day of trial." (Formatting altered.) However, he later admits that "[t]he State indicated there was nothing useful in the interviews and they didn't plan to use that information but that's not what matters." Based on our review, none of the parties attempted to admit the video recordings at trial, so Green's claim that the court erred by admitting the evidence is a nonstarter. In any event, the circuit court determined that the State had shown good cause for its failure to comply with § 971.23(1); thus, the court was not required, pursuant to the statute, to suppress the evidence. *See* § 971.23(7m)(a).

omitted). Under the circumstances, the court concluded that Green was "adequately protected" from prejudice. We agree.

### III. Prosecutorial Misconduct

¶29 Green next argues that he is entitled to a new trial based on prosecutorial misconduct. In certain rare situations, prosecutorial misconduct "can rise to such a level that the defendant is denied his or her due process right to a fair trial," such as where the misconduct "poisons the entire atmosphere of the trial." *State v. Lettice*, 205 Wis. 2d 347, 352, 556 N.W.2d 376 (Ct. App. 1996) (citations omitted). "The determination of whether prosecutorial misconduct occurred and whether such conduct requires a new trial is within the [circuit] court's discretion." *Id.* We will sustain the court's decision if it "examined the relevant facts, applied a proper standard of law, and used a rational process to reach a conclusion that a reasonable judge could reach." *Id.* (citation omitted). "Reversing a criminal conviction on the basis of prosecutorial misconduct is a 'drastic step' that 'should be approached with caution.'" *Id.* (citation omitted).

¶30 On appeal, Green claims that Tuckwab testified falsely about the deal she was offered in exchange for her testimony and that the prosecutor violated Green's due process rights by failing to correct that testimony. The State's offer, which was entered into the record at trial, provided two options to Tuckwab: (1) a wellness court diversion; and (2) a plea without wellness court. The wellness court diversion option required Tuckwab to plead guilty to multiple criminal charges and testify against four individuals; in exchange, she would receive a deferred entry of judgment on two of the charges, three years' probation with multiple conditions, and she would be required to participate in Forest County Wellness Court. If she satisfied all of the conditions, at the end of

thirty-six months, the State would move to dismiss each count with prejudice. Option two did not require Tuckwab's testimony, but it did require her to plead guilty to multiple criminal charges where the parties would be free to argue the amount of incarceration time at sentencing.

¶31     The circuit court did not err by failing to grant Green a new trial on the basis of prosecutorial misconduct. While it is true that Tuckwab first testified during defense counsel's cross-examination that she was not receiving anything in exchange for cooperating with the State, Tuckwab changed her testimony during Bell's counsel's cross-examination to reflect that she was presented with a written offer from the State for drug treatment in exchange for her testimony. She did so prior to any redirect from the prosecution. At that point, Tuckwab's testimony was accurate—even if not the entire story, as she did not mention that she was offered a deferred entry of judgment and possible dismissal of some of the charges. Thus, there was no need for the prosecutor to correct any obviously false testimony. Green takes issue with Tuckwab's statement that she did not know if the State's deal was a "guarantee." The State points out, however, that the agreement was not signed by Tuckwab or her attorney.[17] The circuit court found that Tuckwab testified truthfully that there was no *signed* agreement in place at the time of her testimony. The court thus concluded that the prosecutor had no duty to correct Tuckwab's testimony and that there was no misconduct. Based on the record, the court's findings were not clearly erroneous.

---

[17] Green argues that the document does include the prosecutor's electronic signature. However, the terms of the agreement specifically provide that "[a]cceptance of this offer must be demonstrated by completion of this document. Completion means that this document is signed by the defendant (and his/her attorney), the completed original being filed with the Clerk of Court and a copy with the District Attorney prior to the first scheduled pre-trial date." (Formatting altered.)

¶32     In support of his position that the prosecution improperly failed to correct Tuckwab's testimony, Green relies on *Napue v. Illinois*, 360 U.S. 264 (1959), asserting that *Napue* "presents a nearly identical scenario to the one here." In that case, the State agreed to recommend a reduced sentence against a codefendant if he testified against Napue, but that agreement was not disclosed before trial. *Id.* at 266. Napue alleged that the codefendant had falsely testified that he had not received any promise of consideration in return for his testimony. *Id.* at 267. The United States Supreme Court agreed and determined that the State had violated Napue's due process rights, as the "false testimony used by the State in securing the conviction of [Napue] may have had an effect on the outcome of the trial." *Id.* at 272.

¶33     *Napue* is distinguishable. Unlike Napue, Green was aware that Tuckwab had been offered a plea agreement in exchange for her testimony. Further, Tuckwab's false testimony—that she did not receive any consideration from the State for her testimony—was corrected on cross-examination during the trial, rather than being discovered later. Under these circumstances, the holding in *Napue* does not require reversal.

¶34     Finally, to the extent that Tuckwab did misrepresent the State's proposed offer in her testimony and the State subsequently failed to correct it, we conclude that error was harmless. *See Lettice*, 205 Wis. 2d at 352. It was abundantly clear to the jury that Tuckwab had been offered a deal in exchange for her testimony against Green and Bell. Despite the fact that the deal was not signed and despite the fact that the jury did not know the specific terms of the offer, the jury knew that Tuckwab had been presented some benefit, which satisfied the purpose of impeaching her testimony. Thus, notwithstanding the alleged

prosecutorial misconduct and in light of the entire record of the case, the same result would have been reached by the jury on the facts presented.

## IV. Ineffective Assistance of Counsel

¶35 Green next raises seven ineffective assistance of counsel claims. Green asserts that defense counsel: (1) failed to introduce the jail kite note; (2) failed to request severance during the trial; (3) failed to object to prejudicial other-acts evidence; (4) failed to effectively impeach Tuckwab; (5) failed to effectively impeach Hamilton; (6) failed to object to the State's closing argument; and (7) that the cumulative effect of defense counsel's errors prejudiced Green.

¶36 To demonstrate constitutionally ineffective assistance of counsel, Green must establish both that defense counsel performed deficiently and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether Green has been denied constitutionally effective assistance of counsel is a mixed question of law and fact. *See State v. Savage*, 2020 WI 93, ¶25, 395 Wis. 2d 1, 951 N.W.2d 838. We will not overturn a circuit court's findings of fact unless those findings are clearly erroneous. *Id.* We review de novo whether Green established that defense counsel performed deficiently and that defense counsel's deficient performance prejudiced Green's defense. *See id.*

¶37 To demonstrate deficient performance, Green "must show that his counsel's representation 'fell below an objective standard of reasonableness' considering all the circumstances." *See State v. Shata*, 2015 WI 74, ¶56, 364 Wis. 2d 63, 868 N.W.2d 93 (citations omitted). To establish prejudice, Green "must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *See Savage*, 395 Wis. 2d 1, ¶32 (citation omitted). "In other words, we examine

whether there is 'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" ***State v. Sholar***, 2018 WI 53, ¶33, 381 Wis. 2d 560, 912 N.W.2d 89 (citation omitted). However, Green "need not prove the outcome would 'more likely than not' be different in order to establish prejudice." *See **id.***, ¶44 (citation omitted). "A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." ***State v. Smith***, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

### a. Jail Kite Note

¶38     First, Green claims that defense counsel provided constitutionally ineffective assistance by failing to introduce the unsigned, jail kite note allegedly written by Hamilton. *See supra* ¶15 n.11, ¶18. At the ***Machner*** hearing, defense counsel testified that he had "concern[s]" with using this kite note because he was not sure that Hamilton actually wrote the note, and he was unsure how Hamilton would respond on the witness stand and "didn't want a surprise on the stand in front of the [j]ury." He was also concerned that the kite note would "open the door" to the fact that Green was in jail.

¶39     Based on this testimony, the circuit court found that defense counsel's decision not to use the note was a "reasonable" and "legitimate" strategic decision under the circumstances. We agree with the court's conclusion in that regard. *See **Strickland***, 466 U.S. at 690-91 (observing that counsel's decisions based on a reasonably sound strategy, without the benefit of hindsight, are "virtually unchallengeable"). Further, as noted previously, Green was charged as a party to the crime; thus, a note stating that the drugs did not belong to Green was not exculpatory. This claim fails on the deficient performance prong.

21

### b. Severance

¶40    Green next argues that defense counsel should have moved for severance during the trial.    According to Green, Bell's counsel elicited inconsistent testimony about where the drugs were located in the vehicle.  Crum testified that Hamilton first stated that he found the drugs on the floor of the vehicle under the driver's seat, and then Hamilton later alleged that Bell tossed the drugs at him.  Green argues that the former testimony "directly implicates Green by placing the physical evidence in close proximity of the driver of the vehicle (Green)" and was "meant to implicate Green and exculpate Bell."  Thus, he claims, defense counsel "had a duty to object, request severance, and request a mistrial."

¶41    Green does not meet his burden to establish constitutionally ineffective assistance of counsel.  Whether the drugs were on the floor of the vehicle or whether Bell threw the drugs at Hamilton, both Hamilton's statements sought to avoid responsibility for the drugs and place the blame on Green and/or Bell.  As the State explained, the testimony did not exonerate one man while implicating another; it implicated both men because they were charged as a party to the crime.  We agree that the testimony did not render Green's and Bell's defenses antagonistic; thus, there was no basis for the circuit court to grant a motion to sever.  *See **State v. Jacobsen***, 2014 WI App 13, ¶49, 352 Wis. 2d 409, 842 N.W.2d 365 (2013) ("An attorney does not perform deficiently by failing to make a losing argument.").  This claim fails on the deficient performance prong.

### c. Tuckwab's Testimony

¶42    Next, Green claims that defense counsel provided constitutionally ineffective assistance by failing to object to prejudicial other-acts evidence that

Green solicited oral sex from Tuckwab. At trial, Tuckwab testified that while she was in her bedroom ingesting the drugs that Green had given her, Green knocked on her door and made a hand gesture that Tuckwab interpreted as Green asking her for oral sex. After she refused, Green allegedly stated that he had heroin (presumably that he would give to her in exchange for oral sex), and she refused again. Tuckwab testified that this exchange made her upset, and she cried. Green asserts that defense counsel should have objected to this testimony because it "allowed the jury to see Green in negative light," and he faults the circuit court for not engaging in a ***Sullivan***[18] analysis to determine if the evidence was properly admitted.

¶43 On appeal, the State argues that the evidence was not other-acts evidence but was more appropriately described as panorama evidence. *See **State v. Dukes***, 2007 WI App 175, ¶28, 303 Wis. 2d 208, 736 N.W.2d 515. The State further disputes Green's characterization of the evidence as a request for Tuckwab to engage in prostitution, such that Green's request could be characterized as a crime or a bad act, rather than just a request for a "consensual sexual encounter." In its oral ruling, the circuit court similarly questioned whether the evidence was "technically other[-]acts evidence."

¶44 We conclude that regardless of whether the evidence was properly considered other-acts evidence, Green failed to meet his burden to prove prejudice. Green's alleged request represented a minor portion of Tuckwab's overall extensive testimony in support of the State's theory that the three men were working together to sell drugs, in conjunction with the other evidence

---

[18] ***State v. Sullivan***, 216 Wis. 2d 768, 576 N.W.2d 30 (1998).

presented at trial. Therefore, we conclude that there is no reasonable probability that a jury would have acquitted Green absent Tuckwab's testimony regarding Green's request. *See Savage*, 395 Wis. 2d 1, ¶32. This claim fails on the prejudice prong.

### d. Impeachment of Tuckwab

¶45 Next, Green asserts that defense counsel ineffectively cross-examined Tuckwab. First, Green again references Tuckwab's statements regarding the proposed plea agreement with the State. Green's argument focuses on defense counsel's cross-examination of Tuckwab, but both defense counsel and Bell's counsel cross-examined her. Under the circumstances, we agree with the State's assertion that we must consider Tuckwab's cross-examination "as a whole and not simply the portion where [defense counsel] asked questions," as "[i]t would have been inefficient for the two attorneys to ask the same questions." As previously addressed, when defense counsel cross-examined Tuckwab, she stated that she had received nothing from the State in exchange for her testimony, but she later amended her response upon questioning by Bell's counsel. Thus, the jury heard general information pertaining to a proposed agreement between Tuckwab and the State.

¶46 To the extent Green is now claiming that defense counsel should have done more to correct Tuckwab's testimony, defense counsel testified at the *Machner* hearing that Bell's counsel had taken the position of being more "aggressive" in his cross-examination of Tuckwab. Defense counsel also explained that he wanted to avoid appearing to "attack[] this poor little girl" because it "turns off a [j]ury, turns them against you." Thus, there was a strategic reason for defense counsel's failure to press Tuckwab about the State's offer more

vigorously on cross-examination. Further, our "scrutiny of counsel's performance [is] highly deferential," and counsel must only be "adequate," not perfect. *See Strickland*, 466 U.S. at 689-90; *State v. Williquette*, 180 Wis. 2d 589, 605, 510 N.W.2d 708 (Ct. App. 1993), *aff'd*, 190 Wis. 2d 677, 526 N.W.2d 144 (1995). Accordingly, Green cannot show deficient performance.

¶47     Second, Green argues that defense counsel was ineffective for failing to impeach Tuckwab with prior communications with Hamilton. As noted above, however, Green either cannot or does not point to any evidence in the appellate record suggesting that Tuckwab previously communicated with Hamilton. *See supra* ¶21 & n.15. At trial, Tuckwab stated she did not know the men before they came to her home that day. Green points to a pretrial interview between Crum and Tuckwab where Crum lied to induce Tuckwab to admit that she knew Hamilton. Our review of the interview, however, suggests that Tuckwab never admitted in the interview to previously communicating with any of the men, despite Crum's deceit. Again, postconviction, Crum testified that he never found evidence of any communication between Hamilton and Tuckwab. Thus, defense counsel could not have impeached Tuckwab's testimony with evidence that he did not have. This claim fails on the deficient performance prong.

### e. Impeachment of Hamilton

¶48     Green also argues that defense counsel ineffectively cross-examined Hamilton. Green asserts that defense counsel should have impeached Hamilton by eliciting the specific details of his plea agreement with the State, which called for, among other things, a joint recommendation of five years' initial confinement followed by five years' extended supervision when he was originally facing 98.5 years' imprisonment. Under the circumstances, Green claims "[i]t was ludicrous

for the State to suggest that Mr. Hamilton's plea agreement was simply Mr. Hamilton taking responsibility and that he was 'not escaping anything.'" Green further asserts that without proper cross-examination on the specific terms of the deal, the jury was unable to weigh those factors when assessing Hamilton's credibility, motive, and bias.

¶49    We conclude that Green has failed to show that defense counsel's alleged deficient performance prejudiced him.    During defense counsel's cross-examination, Hamilton testified that he had received a deal in exchange for testifying, which included some counts being dismissed but read in.  Hamilton also testified that he was "hoping for a favorable sentence recommendation from the State."    Green fails to explain how additional specific details regarding the agreement would have led to a different result at trial.  It was clear to the jury that Hamilton was receiving a benefit as a result of his testimony; that alone would have caused the jury to question his credibility.[19]  This claim fails on the prejudice prong.

### f. State's Closing Argument

¶50    Green next asserts that defense counsel should have objected during the State's closing argument.  Green claims, without citation to the record, that the prosecutor "argued that Ms. Tuckwab and Mr. Hamilton would have no motive to testify against Green and Bell.  He argued that Mr. Hamilton and Ms. Tuckwab had never communicated.  He stated that Mr. Hamilton and Ms. Tuckwab received

---

[19] Green also claims that defense counsel was ineffective for failing to impeach Hamilton with his prior communications with Tuckwab, but, again, there is no evidence that Tuckwab and Hamilton communicated before the date in question; thus, defense counsel did not perform deficiently by failing to impeach Hamilton with those communications.

no material benefit from their testimony." According to Green, these "mischaracterizations" created "an entirely untrue and unfair picture of both the law and the facts."

¶51 As the State notes, because Green has not provided record citations in support of this claim, we are unable to review which of the prosecutor's specific statements he finds objectionable. We could deny Green's claim on this basis alone. *See Alswager v. Roundy's Inc.*, 2005 WI App 3, ¶15, 278 Wis. 2d 598, 692 N.W.2d 333 (2004).

¶52 Regardless, Green's arguments on this point are also undeveloped, as he does not explain how the prosecutor's statements were either untrue based on the evidence or objectionable under the law. The prosecutor did ask the jury "what reason" Hamilton and Tuckwab would have to lie, but it was in reference to the fact that they did not have an "interest in the outcome of the trial" such that it mattered "[w]hether someone is found guilty, or not" for them to receive the benefit of their deals. Further, the prosecutor did state that Hamilton and Tuckwab had not communicated, but as noted repeatedly above, Green has failed to cite any evidence showing that this statement was not true. Additionally, while the prosecutor did mention that Tuckwab had nothing to gain, it was in the context of a much broader discussion about her status as an addict who had relapsed:

> Now, I also talked to you a little bit about your knowledge and understanding of alcoholics or addicts and how they relapse. It doesn't mean that people who are alcoholics or addicts are bad people. They don't always get everything right but they are still honest. You need to decide how much to belie[ve] how honest Ms. Tuckwab is. What does she have to gain from it? I submit to you nothing.

27

The prosecutor was also clear in his closing that Tuckwab had a deal requiring her to testify in the case.

¶53    Given our review, we agree with the State that there was no obvious basis for an objection. "During closing arguments, a prosecutor is entitled to 'comment on the evidence, detail the evidence, argue from it to a conclusion, and state that the evidence convinces him or her and should convince the jurors.'" *State v. Miller*, 2012 WI App 68, ¶20, 341 Wis. 2d 737, 816 N.W.2d 331 (citation omitted). Additionally, "a prosecutor is permitted to comment on the credibility of witnesses as long as that comment is based on evidence presented." *Id.* (citation omitted). The prosecutor did just that during his closing. Therefore, we conclude that defense counsel did not perform deficiently by failing to object to the prosecutor's statements.[20] *See Jacobsen*, 352 Wis. 2d 409, ¶49. This claim fails on the deficient performance prong.

### g. Cumulative Prejudice

¶54    Finally, Green argues that defense counsel's cumulative performance fell below reasonable professional standards and that the cumulative effect of defense counsel's errors prejudiced Green. We disagree. As our supreme court explained in *State v. Thiel*, 2003 WI 111, ¶61, 264 Wis. 2d 571,

---

[20] To the extent that defense counsel should have objected to something in the prosecutor's closing argument, we note that immediately prior to closing arguments, the circuit court told the jury: "[Consider] carefully the closing arguments of attorneys. Their arguments and conclusions and opinions are not evidence. Draw your own conclusion from the evidence and decide upon your verdict according to the evidence and the instructions given to you." *See* WIS JI—CRIMINAL 160 (2000). "These instructions, which we presume the jurors followed, alleviate the likelihood that jurors placed any significant weight on the prosecutor's comments other than the weight that came from their own independent examination of the evidence." *See State v. Miller*, 2012 WI App 68, ¶22, 341 Wis. 2d 737, 816 N.W.2d 331 (footnote omitted).

665 N.W.2d 305, "a convicted defendant may not simply present a laundry list of mistakes by counsel and expect to be awarded a new trial. A criminal defense attorney's performance is not expected to be flawless. The Sixth Amendment does not demand perfection." Even when considering all of Green's claims, *see id.*, ¶62, which we have already rejected as noted above, Green fails to show ineffective assistance, *see Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976) ("We have found each of [the defendant's] arguments to be without substance. Adding them together adds nothing. Zero plus zero equals zero."). In other words, Green has failed to establish cumulative prejudice based on defense counsel's alleged errors.

*By the Court*.—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.